[No. 18,301. In Bank.—September 13, 1897.]

## S. PROUTY, Appellant, v. L. A. DEVIN, et al., Respondents.

MORTGAGES—ACTION TO DETERMINE PRIORITY—PRIOR RECORDATION OF SECOND MORTGAGE—NOTICE—FINDINGS—OMISSION TO FIND UPON CONSTRUCTIVE NOTICE—FACTS PUTTING UPON INQUIRY—APPEAL.—In an action to determine the priority of plaintiff's mortgage, which was first executed, over defendant's mortgage upon the same property which was later in execution, but prior in recordation, where there was evidence upon the question of constructive notice, which it was necessary for the trial court to pass upon, and to determine whether the defendant did or did not have actual notice of circumstances sufficient to put a prudent man upon inquiry as to the fact of the existence of the prior mortgage, of which he might have learned by prosecuting such inquiry by ordinary diligence and understanding, it is not sufficient for the court to find that the defendant had no actual notice of its existence, but the question of constructive notice thereof must also be passed upon, and, in case of omission to find thereupon, a judgment in favor of the defendant must be reversed upon appeal.

APPEAL from an order of the Superior Court of Sacramento County denying a new trial. W. C. Van Fleet, Judge.

The facts are stated in the opinion of the court.

Johnson, Johnson & Johnson, and Albert M. Johnson, for Appellant.

Judson Brusie, for Respondents.

HENSHAW, J.—Plaintiff, Prouty, was the owner of a mortgage executed by the defendant Mrs. L. A. Devin. He brought his action seeking a decree establishing his mortgage as a lien upon the property prior to that of a mortgage executed by Mrs. Devin and her husband to defendant Bates, which last mortgage was later in execution, but prior in recordation.

The undisputed facts are, that Mrs. Devin purchased the property upon which the mortgages were given, paying therefor eight thousand dollars, five thousand dollars of which was lent to her by defendant Bates, who is her father. For the remainder of the purchase price, three thousand dollars, she executed a mortgage. Mrs. Devin afterward discounted the joint note of herself and husband, indorsed by plaintiff, Prouty, at the

National Bank of D. O. Mills, and with the proceeds discharged the mortgage. When this note became due payment was demanded of the makers and of the indorser. Finally the bank placed the note in the hands of its attorney, and notified Prouty and the Devins that if it was not paid on or before Saturday, December 27, 1890, suit would be commenced against them. Mrs. Devin came to Sacramento for the purpose of raising money upon the property with which to pay the note due the bank. Prouty secured the three thousand dollars, and deposited it with Leonard & Son, real estate dealers, to be by them lent to Mrs. Devin upon the execution by her and her husband of a mortgage upon the premises. The mortgage and mortgage note were drawn up, and were awaiting execution at the office of Leonard & Son. Mrs. Devin was informed of the fact, and went in search of her husband to have him join with her in the execution of the instruments. She could not find him, and returned shortly before 3 o'clock in the afternoon to the office of the real estate dealers with this information. The bank demanded payment upon that day. She suggested that she should execute the note and mortgage, and take the money and pay it over to the bank, and that her husband would call in upon Monday morning and join in the execution. This was acceded to, she executed the note and mortgage, the money was delivered to her, and by her in turn paid in extinguishment of her note at the bank. Early the following Monday morning Bates and his daughter, Mrs. Devin, with her husband, went to the office of an attorney at law, where the Devins executed to him a mortgage in the sum of five thousand dollars, which he immediately caused to be recorded, while in the office of Leonard & Son they were waiting for Mrs. Devin's husband to call in and join in the execution of the note and mortgage as had been agreed upon.

The mortgaged property was the separate property of Mrs. Devin.

The complaint charged the defendants with a fraudulent conspiracy, setting out the facts and circumstances with much detail, and in paragraph 9 averred that at all the times named the defendant Bates had full, ample, and complete notice and knowledge of all the facts in the complaint alleged. The court found

that "the allegations of paragraph 9 . . . . of the complaint are not true. On the contrary, I find . . . . that when Bates took said mortgage he had not been informed that said L. A. Devin had already executed the mortgage to plaintiff. The defendant W. B. Devin had informed Bates that plaintiff was trying to get said Devin and defendant L. A. Devin, his wife, to execute a mortgage, but did not tell him that the latter had already executed the mortgage, and Bates took his mortgage without knowledge of the fact that said L. A. had before that executed the mortgage to plaintiff."

Section 1217 of the Civil Code provides that an unrecorded instrument is valid as between the parties thereto and those who have notice thereof. Notice is actual and constructive. Actual notice is that which consists in express information of a fact, and constructive notice is that which is imputed by law. (Civ. Code, sec. 18.) "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which by prosecuting such inquiry he might have learned such fact." (Civ. Code, sec. 19.)

The finding of the court above quoted amounts to a declaration that the allegations of paragraph 9 are not true, but that the recital which therein follows sets forth the facts. In its statement of facts it will be observed that the court finds merely that defendant Bates did not have actual notice of the prior mortgage, for the affirmative recital set out by the court is a specification of the particulars in which paragraph 9 is untrue. But that specification is silent upon the subject of the constructive notice to defendant Bates, and there is thus the absence of a necessary finding in the case, namely, a finding as to whether or not the defendant Bates had constructive notice.

That such a finding is necessary to a determination of the case the most cursory reading of the evidence at once establishes, for the general doctrine, as well as the express provision of section 19 of our Civil Code, is that whatever puts a party on inquiry amounts in judgment of law to constructive notice, provided the inquiry becomes a duty, and if followed would lead to the knowledge of the requisite facts by ordinary diligence and understanding. (*Bank of Mendocino v. Baker,* 82 Cal. 114.)

Defendant Bates testifies: "Well, I wanted a mortgage on that place, and I wanted it before anybody else got a mortgage recorded. I didn't want a second mortgage, and I wanted to get my mortgage on record early Monday morning." Again, having testified that he never before had asked his daughter to secure him for the money he had lent her, he is asked: "Why did you do so in this instance? A. Because I smelt a mouse. Q. You smelt a mouse? A. Yes; on Sunday. Q. What sort of a mouse? A. They were trying to raise the money, and they were going to mortgage the place, and if they were going to mortgage the place I wanted the money that they owed me first. Q. But, particularly, did you know anything about it? A. Well, sometimes a man doesn't have to get his head knocked off to know something." Again he says: "And I wanted to get my mortgage on ahead of Prouty's, because a man would be a natural damned fool to want a mortgage after somebody else had recorded his, and I wasn't fool enough to take a second mortgage, because I didn't suppose that Prouty had his mortgage on yet, because Will told me he hadn't signed it yet." Again, when asked if he did not know that his daughter had executed the mortgage to Prouty before she made the one to him, he replied: "Well, I heard several things. I was standing round, and I had heard the telephone ring, and they had talked through it inquiring for this and that, and I saw things, and I had a right to make up my mind. Q. You were satisfied then before that she had signed it? A. I was satisfied I got my mortgage first. Q. But before that you were satisfied that she had signed the Prouty mortgage? A. I didn't know whether she had or not, but I knew Will hadn't. Q. You say you didn't know; were you satisfied or not? A. I didn't know or care to inquire about it. I didn't care to take any notice about it at all."

These quotations might be indefinitely multiplied. They are here made, not as expressing the views of this court as to whether or not Bates had constructive notice, but in illustration of the fact that there was evidence upon the question of constructive notice which it was necessary for the trial court to pass upon. For its oversight in this regard the judgment and order must be reversed and the cause remanded. But, before conclud-

ing, it may be proper to add that the evidence here does not disclose the case for which the respondents contend, a case illustrated by *Worden v. Adams*, 15 Mass. 236. In that case A, a mortgagee, delivered his mortgage to a scrivener for the purpose of having an assignment thereof made to B, his creditor. Before such assignment was prepared and executed, and while the mortgage deed was in the scrivener's hands, A made an assignment of the mortgage upon a separate paper to another creditor, C. This assignment to C was acknowledged and recorded before the assignment to B was completed, C knowing, however, that the mortgage deed had been delivered to the scrivener for the indicated purpose. It was there held that the knowledge imputed to C of an intention upon the part of A to assign the mortgage to B did not impair his title, C "having a right by his vigilance to secure his demands in this way, just as he would have had by an attachment, although he might know that another creditor intended to make an attachment, and had taken incipient measures therefor." In that case C's assignment was valid because at the time it was executed and recorded the assignment to B had not been perfected, and the notice to C, if he had followed it up by inquiry, would have resulted in the knowledge that there was no pre-existing assignment. In the case at bar, however, the contention is, and the uncontradicted evidence shows, that there was a valid, executed, and existing mortgage upon the property at the time when Bates took his mortgage. The question for determination is, whether there was actual notice upon the part of Bates of circumstances sufficient to put him as a prudent man upon inquiry. If so, then in law he is chargeable with constructive notice and knowledge of the fact of this pre-existing mortgage.

The judgment and order are therefore reversed and the cause remanded.

Temple, J., McFarland, J., Harrison, J., Van Fleet, J., and Garoutte, J., concurred.