[Civ. No. 1599. First Appellate District. June 17, 1915.]

MAUD MONTGOMERY et al., Respondents, v. C. W. PETERSON et al., Defendants; TUCKER FARMING COMPANY, (a Corporation), Appellant.

ACTION TO SET ASIDE DEEDS—FRAUD—DISCOVERY—EVIDENCE.—In this action to set aside two deeds to real property on the ground of alleged fraudulent representations, which was commenced about nine years after the deeds were executed, it is held, that passing the point as to whether the action may be treated as one for the recovery of the possession of real property, and therefore barred by the five-year limitation of section 318 of the Code of Civil Procedure, and also passing the more serious question of whether or not the complaint shows a sufficient excuse why a discovery of the fraud was not made within three years, the evidence fails utterly to sustain the finding of the court in favor of the plaintiff in that regard, and shows that the action is barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure.

ID.—STATUTE OF LIMITATIONS—DISCOVERY OF FRAUD.—It is not enough under subdivision 4 of section 338 of the Code of Civil Procedure,

which provides that in case of fraud or mistake the action must be commenced within three years after the discovery by the aggrieved party of the facts constituting the fraud or mistake, to assert that the discovery was not sooner made, but it must be made to appear that it could not have been so made by the exercise of reasonable diligence; and all that reasonable diligence would have disclosed plaintiff is presumed to have known, means of knowledge in such a case being the equivalent of the knowledge which it would have produced.

APPEAL from a judgment of the Superior Court of Monterey County and from an order denying a new trial. George H. Cabaniss, Judge presiding.

The facts are stated in the opinion of the court.

Wm. Sandholdt, and C. F. Lacey, for Appellant.

P. E. Zabala, and W. S. White, for Respondents.

THE COURT.—This action is to set aside two deeds on the ground of alleged fraud. The appeal is by the corporation defendant, Tucker Farming Company, and is from the judgment directing it to execute deeds to the plaintiffs and from an order denying its motion for a new trial.

The real property in question consists of an undivided two-fifths of the remainder in fee of a tract of approximately ninety-five acres, valued at two hundred dollars an acre, situated in Monterey County. On August 4, 1898, the owner of the property at that time, by deed duly recorded on that date, conveyed a life estate therein to Ira B. Tucker, with remainder in fee to the latter's five sons and daughters, two of whom are the plaintiffs herein. At the time of the execution of the deeds here involved in the year 1902, the interest of the life tenant in the property was encumbered by a mortgage and there were delinquent taxes upon the whole tract amounting to four hundred and sixty-eight dollars. The interests of the plaintiffs were not encumbered otherwise than by the lien of these delinquent taxes. When the plaintiffs executed their deeds Maud Montgomery was a married woman and John Tucker was 21 years of age. The life tenant was inclined to dissipation, and F. S. Baker, who was the agent of the life tenant, approached the defendant C. W. Peterson with a proposition to form a corporation, and consolidate

therein the life estate and remainder interests, with a view to the better exploitation of the land by placing it under irrigation and rendering it more productive. C. W. Peterson at once took up the proposition with the owners of the land. In exchange for their conveyances the grantors were to receive certain money and a proportionate share of the stock of a proposed corporation. After considerable negotiation all of the interested parties except one Kitty Tucker reached an agreement along the lines mentioned. This agreement was executed by the parties interested on the twenty-third day of July, 1902, and was acknowledged before a notary public by Ira B. Tucker, the life tenant, Minnie Tucker, and the defendant, C. W. Peterson. The agreement in part provides for conveying the property, the time when the deeds shall be delivered and the amount of cash and the number of shares in the corporation to be received by each of the parties. On the same day that this agreement was executed Ira B. Tucker and Minnie Tucker likewise executed and acknowledged the deed and acknowledged a letter of instructions to their agent, F. S. Baker, and, pending the formation of the corporation, deposited with him the deed in escrow. The agreement, deed, and letter of instructions were forwarded to the plaintiff and Maud Montgomery in San Francisco for execution, and they were accompanied by a letter to her from Ira B. and Minnie Tucker, directing her to deliver the deed and letter of instructions to Baker. On July 24, 1902, in San Francisco, she executed these documents before a notary public, and four days later delivered them to Baker, and also signed the following: "San Francisco, July 28, 1902. I hereby deliver to F. S. Baker the aforesaid deed, also letter of instructions." She then received as her proportion of the venture two hundred and fifty dollars in cash and later three thousand six hundred shares of the capital stock of the corporation, which in the mean time had been organized.

At the time of this transaction the plaintiff, John Tucker, was a minor, but on August 29, 1902, after becoming of age, he deeded directly to the corporation and acknowledged his conveyance before a notary public. He, too, received at that time two hundred and fifty dollars and three thousand six hundred shares of the capital stock of the corporation defendant as had been agreed.

27 Cal. App.—43

Deeds from Ira B. Tucker, Minnie Tucker, and the plaintiffs were recorded in August, 1902.

The plaintiffs testified that Peterson guaranteed them from five hundred dollars to one thousand dollars per year each as their shares of the yearly rents.

Maud Montogomery retained her stock in the corporation for nearly two years and then sold it to third parties and received therefor two hundred and fifty dollars, John Tucker also sold his stock for two hundred and fifty dollars, but the date of the sale does not appear. Neither of the plaintiffs ever received any dividends on the stock, nor did they ever make the slightest inquiry as to why the alleged guaranteed rents were not forthcoming. Neither of them claimed to have been imposed upon until after the death of the life tenant. This action was commenced about three months after that time and about nine years after the deeds in question were executed. John Tucker testified that before he executed his deed he requested of Baker permission to read it, but this was refused, and he further testified that Peterson telephoned to him that if he did not sign it he would have him arrested and that he thereupon signed it without reading it. Both testified that they were led to believe and did in fact believe that the negotiation between them and Peterson was for a lease of the property for the period of the life of the life tenant, and that when they executed the document they supposed it was such a lease. The trial court found this testimony to be true.

As to the fraud and deceit alleged to have been practiced on the plaintiffs by defendants, the evidence introduced by plaintiffs is substantially as follows: That at different times prior to the twenty-third day of July, 1902, the defendant C. W. Peterson represented to the plaintiffs that their interest in the property, being an expectancy, could be defeated by Ira B. Tucker, the life tenant; that the property was heavily mortgaged; that the life tenant would not and could not by reason of his habits of extravagance and dissipation pay the mortgage; that the interest upon the mortgage and taxes upon the premises would soon amount to a sum which would cause the total loss of the interest of the plaintiffs in and to said premises; that the only way to save said interest would be to form a corporation and lease the property to it; that if this were done the life tenant could not encumber or dispose

of the interest of the plaintiffs, but that their interest would be protected by a board of directors; that plaintiffs could not during the life of Ira B. Tucker derive any benefit from the land, and that the formation of a corporation and the leasing thereto of their interest in the premises, would in no way affect their rights after the death of the life tenant, but, on the contrary, upon his death any corporation so formed would immediately be dissolved and plaintiffs would take their interest in the land under the deed of their grandfather, Ira Tucker, unless they desired to continue the same in existence.

These representations made by Peterson, alleges the complaint, were false and made for the purpose of deceiving the plaintiffs; and that they, by reason of their youth and lack of business experience, believed those representations, and consented to the formation of the corporation, and executed and delivered the deed, which they believed to be a lease.

The prayer of the complaint is that the defendants be compelled to reconvey the property to the plaintiffs, and for an accounting.

In addition to joining issue upon all of the essential averments of the complaint, the answer pleads that the action is barred by the provisions of sections 318, 338, and 343 of the Code of Civil Procedure.

The findings of the court were for the plaintiffs on all the material issues presented by the pleadings.

If, notwithstanding the allegations of fraud, the action may be treated as one for the recovery of the possession of real property, perhaps, as contended by appellant, it is barred by the five years limitation contained in section 318 of the Code of Civil Procedure. (*Murphy* v. *Crowley,* 140 Cal. 146, [73 Pac. 820] ; *Unkel* v. *Robinson,* 163 Cal. 648, 650, [126 Pac. 485].) But passing this point, together with the more serious question of whether or not the complaint shows a sufficient excuse why a discovery of the fraud was not made within three years, we think that the evidence in the case fails utterly to sustain the finding of the court in favor of the plaintiffs in that regard. Subdivision 4 of section 338 of the Code of Civil Procedure, provides that in the case of fraud or mistake the action must be commenced within three years after the discovery by the aggrieved party of the facts constituting fraud or mistake. Under the cases in this state it is not enough to assert that the discovery was not sooner

made. It must appear that it could not have been made by the exercise of reasonable diligence; and all that reasonable diligence would have disclosed plaintiff is presumed to have known, means of knowledge in such a case being the equivalent of the knowledge which it would have produced. (*Truett* v. *Onderdonk,* 120 Cal. 581, 588, [53 Pac. 26]; *Lady Washington Co.* v. *Wood,* 113 Cal. 482, 486, [45 Pac. 809]; *Del Campo* v. *Camarillo,* 154 Cal. 647, [98 Pac. 1049]. See, also, *Wood* v. *Carpenter,* 101 U. S. 135, 140, [25 L. Ed. 807].) The plaintiffs having only a remainder interest in the property, and knowing this, as they did, it is difficult to understand why they should believe that the defendant corporation would have cared to take from them a lease for the life of the life tenant, when of course the latter could have made such a lease alone. As just stated, the plaintiffs knew the extent of their interest. They could read and write. There was no claim of any fiduciary relationship between them and Peterson or the corporation; and the very circumstance that they received for their signatures to the alleged lease five hundred dollars and certain shares of stock, which they sold for a like amount, was sufficient to invite the attention and arouse the suspicion of the plaintiffs, or of any person of ordinary intelligence. The deeds were recorded immediately upon their execution, and there was no concealment in that regard. So far as Mrs. Montgomery is concerned, she had every possible opportunity to read the contract and deed. She therefore had the means of knowledge which, as we have just seen, is, in a case like this, the equivalent of knowledge. In any event, the defendants having placed the instruments in her hands, and afforded her every opportunity to examine them, negatives the idea that they were attempting any deceit or fraud. As to the plaintiff, John Tucker, according to his testimony he requested permission to read the deed made by him, and this request was refused. He says that he was then threatened with immediate arrest unless he signed it; that before he signed the deed before the notary, Baker told the notary that Tucker thoroughly understood the deed and that it had been explained to him. Here he had ample opportunity to examine the deed, but did not do so. Thereupon he signed it and delivered it to Baker. Under such circumstances, as was said in the case of *Simpson* v. *Dalziel,* 135 Cal. 599, 603, [67 Pac.

1080, 1082]. "Natural curiosity as well as business prudence would have compelled him to make inquiry; and his failure to make it was inexcusable negligence; and one is presumed to know whatever with reasonable diligence he might have ascertained concerning the fraud of which he complains." The alleged refusal of permission to read the deed and threats of arrest were certainly "circumstances sufficient to put a prudent man upon inquiry as to what the instrument was." Neither of the plaintiffs received any of the alleged promised dividends, and this too was a circumstance that should have put them upon notice. The testimony in the case shows that the plaintiffs knew that they had executed deeds, and it is inconsistent with any other theory. But however that may be, it is certain that the evidence discloses that the action is barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure, as construed by the cases already cited.

Judgment and order reversed.