[Civ. No. 8535.   First Appellate District, Division One.—September 23, 1932.]

ALFRED FUHRMAN, Respondent, v. AMERICAN NATIONAL BUILDING AND LOAN ASSOCIATION (a Corporation) et al., Appellants.

Thomas E. Hayden, Edward A. O'Brien and Sullivan, Roche, Johnson & Barry for Appellants.

H. W. Hutton for Respondent.

LAMBERSON, J., *pro tem.*—The respondent brought action against the appellant, American National Building and Loan Association, a corporation, and the other appellants as directors thereof, to recover the sum of $2,500, being the amount of a first payment made by respondent on a subscription for 100 shares of the "guarantee capital stock" of the appellant corporation, and prayed for the cancellation of the subscription agreement upon the ground that he had been induced by fraudulent representations of the appellants and their agents to sign the subscription agreement. Judgment was entered in favor of respondent for the sum of $2,500, with interest thereon at the legal rate from June 4, 1929, and it was decreed that the subscription agreement be canceled and surrendered to the respondent.

The defendant corporation was organized as a building and loan corporation under the laws of California, on

February 28, 1929, with an authorized "guarantee capital stock" of $5,000,000 divided into 50,000 shares of the par value of $100 each. For the purposes of the organization, there were seven directors, to each of whom there were ostensibly allotted ten shares of the capital stock, none of which, however, were ever issued or paid for, or have been outstanding at any time. It is admitted in appellants' brief that three of the seven so-called original incorporators were merely dummy directors, in the sense that their names were used as a matter of convenience in incorporating the company, "as indeed were the names of the other four directors, in so far as their subscription to ten shares each of the capital stock of said corporation were concerned". The last four, however, did thereafter subscribe for shares of stock in the company at $125 per share.

On March 8, 1929, the defendant corporation entered into an agreement with one V. M. Price, who was neither a director nor one of the original incorporators, wherein it was recited that the original incorporators of the appellant corporation had theretofore subscribed for seventy shares of the guarantee capital stock, thereby leaving in the treasury, unsold and not subscribed for, 49,930 shares; that the board of directors had offered said 49,930 shares for sale, and the said V. M. Price had offered the sum of $105 per share for the same, which offer had been accepted by the board. It was then agreed that the corporation sold, and the said Price bought, said shares of stock, the seller to issue certificates therefor at any time prior to March 8, 1939, for lots of one share or more, upon the payment of the purchase price of $105 per share, no dividends to accrue until such purchase price for each share had been paid, and no interest to be paid by the buyer. It appears that Price thereafter began a selling and advertising campaign, in the course of which there appeared a double page advertisement in the San Francisco "Examiner", and a large advertisement in the San Francisco "Chronicle", in the name of the defendant corporation, Price's name not being mentioned therein. In the "Examiner" advertisement appear, among others, the following representations: "Subscriptions for a limited amount of the guarantee capital can be made through any of our State agency offices listed herewith or at the main San

Francisco office by mail or wire. In view of the fact that guarantee capital has been tightly held by a few of the original incorporators and directors, the management believes that this opportunity for public participation is a forward step in the policy of building and loan finance, in that it allows a large number of small investors to enjoy initial opportunity with the incorporators, instead of a limited privilege to make interest deposits or purchase investment certificates. Guarantee capital will participate in earnings''. The ''Examiner'' advertisement also set forth a list of *ten* directors, among whom one J. C. Berendsen, a business man of San Francisco, was named. In the ''Chronicle'' advertisement, the statement was repeated that Berendsen was a director, and this was accompanied by a laudatory recital of his experience in the business affairs of San Francisco, together with his photograph, all of which was published without his knowledge or consent.

Within a few days after the publication of these advertisements, respondent was visited by representatives of the appellant corporation or its sales agent, and was furnished with literature apparently issued and distributed in the name of such appellant, in which the following statement was made: ''A substantial part of the original authorized issue has been subscribed for and the offering, herewith, is presented as an opportunity to the public to participate by direct investment in the guarantee capital, instead of being confined to interest on deposit monies''. The representation was also made in the ''Examiner'' advertisement that the Crocker First Federal Trust Company was the registrar of the defendant corporation, and that Anglo-California Trust Company was the transfer agent. The advertisements did not state the number of shares into which the capital stock was divided, or their par value, but stated that shares of appellant corporation would be available at $125 per share.

On May 23, 1929, in response to invitations from representatives of appellants or their sales agent, respondent visited the offices of the appellant corporation where he was handed an envelope which contained copies of the advertisements published in the ''Examiner'' and ''Chronicle,'' and was told by a person who gave them to him that the

two advertisements contained all of the facts regarding the company. He had previously been asked to subscribe for stock, and was again solicited on May 23d. After looking around the offices, examining the subscription book which was shown to him, and talking with one of the persons there who was described as a director and chief counsel of the corporation, he signed the subscription agreement for the purchase of 100 shares at a price of $125 per share, and at that time gave the agents of appellants a check for $2,500 drawn in favor of the corporation as an initial payment on his subscription, final payment to be made July 2, 1929. It later developed that of the amount paid by respondent, $2,000 was immediately paid to Price as his commission on the entire sale, the $500 remaining with the corporation. Up to and including May 21, 1929, a total of 1573 shares had been subscribed for, and during the following week subscriptions for an additional 436 shares had been offered. Respondent alleges that about June 3d he discovered the falsity of the statements which had been made to him, and learned for the first time of the contract with Price, and that about June 4th he gave notice of rescission to the appellant corporation, and about June 5th, in a letter addressed to one Thomas E. Hayden, who had been represented to respondent as a director and chief counsel of appellant corporation, stated in detail his reasons for believing that fraud had been practiced upon him in securing his subscription. The complaint alleges that for the purpose of inducing the general public to subscribe for and purchase the guarantee capital stock of the defendant corporation, said corporation and the other defendants named, who were directors thereof, caused the advertisements hereinbefore mentioned to be published, and other advertisements to be sent through the mail and distributed to the public, setting forth among other things, the matters hereinbefore stated, and that each and all of the representations so made and published were known by defendants to be fraudulent; that in truth and in fact, subscribers for stock at $125 per share did not and could not enjoy initial opportunity with the incorporators who paid only $100 per share; that seven of the incorporators had subscribed for only ten shares each, leaving a balance of 49,930 shares in the

treasury of the corporation; that on March 8th, V. M. Price bought the balance of the stock for $105 per share without any interest on the agreed purchase price, and has ever since such time been the sole owner thereof; that the representations were not actually believed by defendants to be true; that such false representations were made with intent that they should be acted on by respondent, and that he relied on each of such representations, and has been damaged in the sum of $2,500.

The court found that between May 17 and May 23, inclusive, 1929, the defendants, their agents and servants solicited plaintiff to subscribe for and purchase shares of the guarantee capital stock of appellant corporation, and did deliver certain advertising matter, and by verbal statements represented and stated to plaintiff the matters which have been heretofore outlined; that such statements and representations were false and untrue in that subscribers for stock at $125 per share did not enjoy initial opportunity with the incorporators, because said incorporators paid nothing for their subscribed stock; that on March 8, 1929, the corporation entered into the sales contract with V. M. Price, hereinbefore mentioned; that at the time of plaintiff's subscription, no substantial part, or more than a small fraction of the original authorized stock had been subscribed; that Crocker First Federal Trust Company was not the registrar of defendant corporation; that Anglo-California Trust Company was not the transfer agent; that J. C. Berendsen was not a director, and never had been a director; that all matters and things so stated and represented to plaintiff to be true were material and substantial particulars in respect of the said corporation, in the conduct and supervision of its business and financial affairs; that said statements were, at the times they were made, known by defendants to be untrue, and were made with intent to deceive and induce plaintiff to purchase stock of appellant corporation; that plaintiff was ignorant of their falsity, relied thereon, and was deceived thereby; that, except for such representations, plaintiff would not have subscribed for any of said shares, and would not have paid said sum of $2,500 therefore; that plaintiff discovered the fraudulent nature of the representations about June 4, 1929, and immediately rescinded his subscription; that by

reason of the false representations made by defendants, and the immediate rescission by plaintiff, the subscription became void and of no effect.

Between May 13 and May 24, 1929, the Crocker First Federal Trust Company, Anglo-California Trust Company and J. C. Berendsen, respectively, notified appellant corporation in writing that they declined to act in the capacity described in the advertising matter, and the Anglo-California Trust Company requested appellant corporation to refrain from using its name in any advertising matter.

■ Appellants urge that the evidence is insufficient to sustain the findings of the court and, as their first specification, object to the finding that subscribers for stock at $125 per share did not enjoy initial opportunity with the incorporators, and urge that it is contrary to the purpose and intent intended to be conveyed in the advertising matter, which was, according to appellants' argument to draw the public's attention to the distinction existing between the former and usual practice of original incorporators of building and loan associations in tightly holding for themselves the guarantee capital stock and offering to the public only the limited privilege of making interest deposits, or purchasing investment certificates. While the statements contained in the advertising material of the company, aside from the newspaper advertisements, bear the construction claimed by appellants, the matter contained in the "Examiner" advertisement clearly claims the merit for the stock selling plan of the appellants, which the findings have attributed to such advertising matter, and it could easily have been inferred from the advertising material that every subscriber would be on an equal footing, both as to themselves and to the original incorporators. The corporation was apparently, at the time the subscription was signed by respondent, not actively engaged in a building and loan business, and the only purpose of the advertising and of the selling campaign was to attract investors who desired to purchase shares of the stock of the corporation, and thereby furnish a working capital for the corporation.

■ The next serious objection is that in which appellants take issue with the finding that no substantial part, or more than a small fraction of the original authorized

issue of stock had been subscribed. Up to May 21, 1929, a total of only 1573 shares, or a trifle over three per cent of the total issue of stock had been subscribed. During the following week, 436 shares had been added, making a total on May 28th of 2,009 shares. When the advertising matter was first presented to respondent, less than 1573 shares had been subscribed, and the advertising matter was not changed, nor were the representations altered at the time respondent finally made his first payment on May 23d. The word "substantial" as used in the findings is a relative term, the meaning of which is to be gauged by all the circumstances surrounding the transaction in reference to which the expression has been used. It imports a considerable amount or value in opposition to that which is inconsequential or small. We find support for the finding of the court in the fact that this representation was contained in the first advertising matter distributed by the corporation, at which time little or no stock of the corporation had been subscribed, and an examination of all of the advertising literature received in evidence indicates that the sales agents of the corporation intended to indulge in exaggeration if they found it necessary for their purpose, regardless of what the need for accurate information on the part of the prospective investor might be.

A representation as to the amount of capital stock subscribed or paid in is a representation as to a material matter. (14 Cor. Jur. 606.) The question of whether or not the use of the word "substantial" constituted a misrepresentation of a material matter, being a question of fact for the trial court, in the light of the circumstances surrounding the entire transaction, and the conclusion of the court having support in the evidence, we cannot say that, as a matter of law, there was no evidence to support the finding.

The next objection is that the evidence does not support the findings that the representations as to the Crocker First Federal Trust Company acting as registrar of the defendant corporation, that the Anglo-California Trust Company was the transfer agent, and that J. C. Berendsen was a director, were false and untrue, and were made with intent to deceive respondent. The fact that the representations were made is not questioned, but appellants contend they were not made with any intent to

defraud, or with knowledge of their falsity, and that they were not, under the circumstances, representations as to material matters. Each of the appointments or positions specified was tendered to the respective corporations and person named, but each of them had sent to the corporation a written refusal to accept such appointment before the twenty-third day of May, 1929. An examination of the entire record discloses that the appellants or their agents, in their anxiety to make an impression on the public, and to present as imposing an array of influential connections as possible, were either active in or permitted advertising and publicity matter to be published and circulated, which contained the various statements cited as misrepresentations, which were untrue, or which the appellants did not know to be true, and that there is sufficient evidence to support the conclusion of the trial court that they constituted misrepresentations of existing facts upon which the respondent relied in signing a subscription agreement to purchase stock of the appellant corporation, and in making the initial payment for the same, even though we may charitably indulge in the presumption that the directors were innocent of a desire to participate in any fraud, and that some of the representations were in the nature of mere matters of opinion or of extravagant sales talk. ▪

Any false statement by the authorized agents of a corporation in regard to the past or present status of the corporate enterprise, or material matters connected therewith, whereby subscriptions are obtained, is a fraudulent representation, and a false statement that certain individuals are officers or directors is a false representation. (*Vulcan Fire Ins. Co.* v. *Jorgensen,* 33 Cal. App. 763 [166 Pac. 835].) In an action for fraudulent representations if the finding is sustained by the evidence as to one material fraudulent representation, it is sufficient. (*Beeman* v. *Richardson,* 185 Cal. 280 [196 Pac. 774].)

Section 1572 of the Civil Code provides in part as follows: "Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The

positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true.''

In *McMahon* v. *Grimes*, 206 Cal. 526 [275 Pac. 440, 443], the court quoted, at page 535, from other authorities, as follows: '' 'If a party asserts that as true which he does not know to be true, it is a false representation. If he intends to state his belief upon information then he should state it in that precise form, so as to apprise the other party of the true grounds upon which his statement is made. A party will always be held to make good his statement in the form in which he makes it. If he state a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his peril, and must make good his assertion.' '' ▪ A person subscribing for capital stock in a corporation is justified in relying upon representations concerning existing facts not within his knowledge, or his means of knowledge, but within the knowledge of the party making the representations (*Hogberg* v. *Landfield*, 99 Cal. App. 360 [278 Pac. 907]), and where a corporation is represented by sales agents who make actionable misrepresentations in securing sales of stock of the corporation, the corporation is chargeable with such misrepresentations. (*Dox* v. *R. E. Lomax Co.*, 29 Cal. App. 718 [156 Pac. 874].)

▪ Directors of a corporation who have put forth, or have permitted to be put forth in the name of the corporation, false and fraudulent statements, either in equivocal language or positive affirmations, in making up their prospectus, circulars or other advertising matter, whereby members of the public are induced to purchase its shares of stock, make themselves liable to persons thereby deceived and defrauded jointly with the corporation itself. (14a Cor. Jur. 184.) Hidden or equivocal meanings, which the average person could not discern, do not mitigate the offense of allowing false or deceptive statements to be made, the true test of liability or responsibility in the case of the directors being the impression created by the prospectus or the advertising literature as a whole, and whether or not all of the material, taken together, constitutes a false representation. (*Churchill* v. *St. George Development Co.*, 174

App. Div. 1 [160 N. Y. Supp. 357]; *Bystrom* v. *Quillard,* 175 App. Div. 433 [162 N. Y. Supp. 100].)

The safety and security of the investing public require that no material misstatement or concealment of any material fact should be permitted. (*Morgan* v. *Skiddy et al.,* 62 N. Y. 319.)

The tendency of the courts is to hold promoters and directors of corporations to a strict accountability for the accuracy of their representations which are made with a view of inducing strangers to the enterprise to invest therein, and to refuse to extend immunity for false statements because they might believe them to be true, if in fact, they were false. (*Bystrom* v. *Villard, supra.*)

A review of the evidence in the instant case does not indicate a suggestion that any leniency should have been granted to the appellants because they may have believed that the corporations named respectively as registrar and transfer agent, or the individual named as a director, would eventually accept the invitation of the directors to become connected with their organization in the capacities specified in the advertising matter of the corporation. Respondent had the right to rely on the statements contained in the various pieces of advertising matter given to him and the representations made in the name of the corporation which bore upon the soundness, stability and good standing of the corporation, and its connections in the business world, which connections the promoters were apparently anxious to form; and respondent was entitled to believe that the inferences which he drew from the advertising material and statements in regard to the acquisition by the corporation of a substantial working capital, as well as the inference that the entire sum paid by him for each share was actually to become a part of the capital of the corporation, were correct. No misrepresentation as to the manner in which the stock was issued or as to the method of organization should be countenanced.

Objection has been made by appellants that respondent did not actually rely on the statements contained in the advertisements and set forth in the complaint, but that he made his subscription in reliance entirely upon the fact that one Thomas E. Hayden was a director and chief counsel of the corporation, and that said Thomas E. Hayden

assured respondent that everything concerning the affairs of the corporation was being thoroughly and honestly conducted, and that he himself had subscribed for 100 shares of the stock in the corporation. This contention has as its chief support the testimony of Hayden and the sales agents who approached respondent in regard to making a subscription for stock. The testimony of Hayden was equivocal and evasive, and it is difficult to believe that Hayden, as one of the original incorporators, could have been ignorant in any way of the facts regarding the Price contract, or of the statements which were being promulgated by the agents of the corporation. The testimony of these witnesses did nothing more than to raise a conflict in the evidence which was resolved in favor of the respondent, and the findings of the court are supported so amply that they cannot be disturbed by this court.

The further contention is made that there is no showing that the fraud in this case, if any, produced any injury to respondent, and that damages, accordingly, cannot be recovered therefor. In an action upon a false representation, which formed the basis for a subscription to the capital stock of a corporation, where the circumstances are such as to entitle the subscriber to rescind, it is not necessary to allege or prove pecuniary damages. (*Vulcan Fire Ins. Co.* v. *Jorgensen, supra.*) Respondent was entitled to rescind and to recover whatever he had paid or delivered to the corporation in the course of the fraudulent transaction.

For the reasons stated, the trial court properly denied appellants' motion for a new trial, and we are of the opinion that the judgment should be affirmed. It is so ordered.

Knight, Acting P. J., and Cashin, J., concurred.