[Civ. No. 10437. Second Appellate District, Division One.—April 27, 1936.]

H. C. DENSON et al., Respondents, v. H. C. PRESSEY et al., Appellants.

H. E. Gleason and John F. Poole for Appellants.

Elliott & Aberle and Robert E. Moore, Jr., for Respondents.

YORK, Acting P. J.—The plaintiffs recovered judgment in the sum of $15,000 in an action for damages as result of alleged fraud in the sale of stock made to plaintiffs by defendants. There were a number of representations alleged, and although some of them may not be classed as actionable, there is no doubt, in view of the verdict of the jury on conflicting evidence, that there was proved by credible evidence misrepresentations of an actionable nature sufficient to legally anchor the verdict and the judgment thereon.

 Plaintiffs alleged that on May 9 and July 10, 1928, they purchased, in two several blocks of 10,000 shares each, stock of the Surety Mortgage Company for the sum of $20,000. Among the representations made inducing them to make the purchase were, (1) that the stock was treasury stock; (2) that it was reasonably worth and was selling for par, to wit: $1 per share; (3) that the company had been in existence a number of years and never had any difficulty in paying and had paid a seven per cent dividend, and never had difficulty in meeting its current obligations; (4) that defendant H. C. Pressey controlled a large block of stock which he had purchased for himself and the members of his family;

(5) that the stock in a short while would be paying in excess of (7) per cent dividends, because the company was in such sound financial condition that "certain changes in the income properties were bringing in a new influx of earnings into the corporation". There can be no doubt that representations 1, 3 and 4 were representations of fact and were material. (*Moore* v. *Moore,* 56 Cal. 89; *Ingraham* v. *Lyon,* 105 Cal. 254 [38 Pac. 892]; *Eachus* v. *City of Los Angeles,* 130 Cal. 492 [62 Pac. 829, 80 Am. St. Rep. 147]; *Johnson* v. *Dixon Farms Co.,* 29 Cal. App. 52, 57 [155 Pac. 134]; *Brooks* v. *City of Monterey,* 106 Cal. App. 649 [290 Pac. 540]; *Snyder* v. *City Bond & Finance Co.,* 106 Cal. App. 745 [289 Pac. 859].) Representations 2 and 5 might be considered as expressions of opinion. It is settled that when an expression of opinion is asserted as an existing fact material to the transaction and has a reasonable tendency to induce one of the parties to the transaction to rely upon its as a fact, it falls within the definition of fraudulent representations. (*Harris* v. *Miller,* 196 Cal. 8 [235 Pac. 981].) It is also established that proof of a single material misrepresentation is sufficient to sustain a cause of action. (12 Cal. Jur. 741; *MacDonald* v. *de Fremery,* 168 Cal. 189 [142 Pac. 73]; *Stewart* v. *Crowley,* 213 Cal. 694, 700 [3 Pac. (2d) 562]; *Jackson* v. *Miehnardt,* 99 Cal. App. 283, 289, 290 [278 Pac. 462].)

 The decisive questions on appeal are whether the complaint, to which a demurrer was filed and overruled, stated a cause of action, and whether the evidence sustained the verdict of the jury upon which the judgment appealed from is based. Plaintiffs alleged that they "relied upon the statements and representations aforesaid . . . believed each and all of them . . . and by reason (thereof) . . . did purchase the . . . stock . . . at the insistence and suggestion of . . . H. C. Pressey . . . " The present action was filed November 21, 1933. More than five years had expired since the last purchase of the stock, July of 1928, and it is apparent then that the statute of limitations bars the action, unless facts are alleged and proved which tolled the running of the statute.

The complaint alleges that plaintiffs did not discover the fraud until July 9, 1933, "at which time the plaintiffs were called into conference by the trustee in bankruptcy for the Surety Mortgage Company and the attorney for said trustee;
. . .

"That at said conference hereinabove referred to, said attorney for said trustee informed the plaintiffs that he had information indicating that the defendant, H. C. Pressey, had defrauded the plaintiffs, and that the stock purchased by the plaintiffs was not treasury stock, but was stock procured by the defendant, H. C. Pressey, from certain other stockholders at a very small sum per share, said purchase price being considerably less than the par value of said stock; that the plaintiffs discounted this rumor by reason of plaintiffs' faith in the defendant, H. C. Pressey, and it was not until on or about the month of September, 1933, that . . . the plaintiffs discovered on the books and records of the Surety Mortgage Company entries in the cash records and stock records of the Surety Mortgage Company, which indicated clearly to the plaintiffs that the defendant, H. C. Pressey, had received the benefit of the $20,000 paid by the plaintiffs to the Surety Mortgage Company . . . "

It is further alleged in the amended complaint: " . . . that the said H. C. Pressey caused the plaintiffs to receive dividends for their first year as stockholders, thereby impressing upon said plaintiffs the value of said stock; that the plaintiff, H. C. Denson, and the defendant, H. C. Pressey, *became close friends socially, and many of their frequent talks during the period from May, 1928, to February, 1932, centered around the representations by the defendant, Pressey, that the company had certain properties and assets, chiefly apartment houses, which would survive the depression and enable the plaintiffs and the defendant, H. C. Pressey, to realize 100% of the par value of their stock; that when the Surety Mortgage Company discontinued the payment of dividends, the defendant, H. C. Pressey, informed the plaintiffs that he, Pressey, was taking over the management of the Surety Mortgage Company and would protect the interests of the plaintiffs since he, Pressey, had the controlling interest in the company. This was in the year 1929.* (Italics ours.) In 1930 the plaintiffs loaned $7,000.00 to the Surety Mortgage Company at the request of the defendant, H. C. Pressey, upon his assurance that the loan was absolutely safe, and stock in the Richfield Oil Company was given by the Surety Mortgage Company, as collateral, as an apparent evidence of good faith. In July of 1930, a payment of $4,000.00 was made on this note by the Surety Mortgage Company to the plain-

tiffs; that the plaintiffs, from July, 1930, until January, 1931, paid several assessments upon their stock, said assessments being represented as necessary to prevent temporary financial embarrassment on the part of the company, and 16,844 shares of forfeited stock was purchased by the plaintiffs upon the statement of Mr. Pressey that he, himself, had taken up quite a number of shares of said stock and that the company's financial position merited such a step. . . .

"That the plaintiffs further allege that in July, 1930, the plaintiffs paid an assessment on the herein referred to 20,000 shares of stock of $2,000, by causing said assessment to be deducted from the balance on the note held by plaintiffs against the Surety Mortgage Company; that thereafter, to-wit, on the 22nd day of July, 1930, and the 25th day of November, 1930, at the instance and request and suggestion of the defendant, H. C. Pressey, the plaintiffs invested the sums of $525.00 and $359.31, respectively, in stock which had been forfeited by stockholders of the Surety Mortgage Company who had failed to meet their assessments; . . . "

In our opinion the allegations of the complaint, all of which are sustained by ample evidence, were sufficient to prevent the barring of the cause of action by the statute of limitations, under the rules of pleading enunciated in the leading case of *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809], and such cases as *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268], which follow it. Further the italicized allegations were of such a nature as to lure the plaintiffs into a sense of security, and thus divert any suspicion that might prompt plaintiffs to make an investigation. As said in the case of *Tarke* v. *Bingham,* 123 Cal. 163, at 166 [55 Pac. 759] : "Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission. (*Bank of Mendocino* v. *Baker,* 82 Cal. 114 [22 Pac. 1037, 6 L. R. A. 833] ; *Prouty* v. *Devin,* 118 Cal. 258 [50 Pac. 380].) In this case, though means of information were open to the plaintiff, it does not appear that there was any duty

devolving upon him to make use of them. Nothing had occurred to excite his suspicion, or to put him upon inquiry, and for these reasons, under the facts of this case, we think the finding of the court sufficient and sufficiently supported by the evidence.'' See, also, *Lataillade* v. *Orena,* 91 Cal. 565 [27 Pac. 924, 25 Am. St. Rep. 219]; *Estudillo* v. *Security Loan etc. Co.,* 149 Cal. 556 [87 Pac. 19]; *Miller* v. *Ash,* 156 Cal. 544 [105 Pac. 600]; *Teague* v. *Hall,* 171 Cal. 668, 671 [154 Pac. 851]; *Cameron* v. *Evans Securities Corp.,* 119 Cal. App. 164, 170, 171 [6 Pac. (2d) 272]; *Neff* v. *Engler,* 205 Cal. 484, 488 [271 Pac. 744]; *Adkins* v. *Potter,* 211 Cal. 512, 520 [296 Pac. 285]; *Divani* v. *Donovan,* 214 Cal. 447, 453 [6 Pac. (2d) 247]; *Grady* v. *Luy,* 117 Cal. App. 292 [3 Pac. (2d) 577]; *Payne* v. *Clow,* 114 Cal. App. 597, 600, 601 [300 Pac. 138].

In the case of *Teague* v. *Hall,* 171 Cal. 668, at 671 [154 Pac. 851], it is said: ''This view of the law has been repeatedly declared in the decisions of this state. In *Ruhl* v. *Mott,* 120 Cal. 668, 676 [53 Pac. 304], . . . the court says: 'it is true that where one is justified in relying, and in fact does rely upon false representations, his right of action is not destroyed because means of knowledge were open to him. In such a case, no duty in law is devolved upon him to employ such means of knowledge.' The same doctrine is declared in *Bank of Woodland* v. *Hiatt,* 58 Cal. 234; *Wenzel* v. *Schulz,* 78 Cal. 221 [20 Pac. 404]; *Morris* v. *Courtney,* 120 Cal. 63 [52 Pac. 129]; *Dow* v. *Swain,* 125 Cal. 674, pp. 683, 684 [58 Pac. 271]; *Maxon-Nowlin Co.* v. *Norswing,* 166 Cal. 509, 512 [137 Pac. 240]; *Eichelberger* v. *Mills L. & W. Co.,* 9 Cal. App. 628 [100 Pac. 117].''

The evidence clearly shows that at no time did plaintiffs have knowledge of any fact or circumstance which would have created a suspicion that defendants sold to them anything but treasury stock. The representation to plaintiffs by defendants that stock sold was treasury stock was a material representation and in itself was sufficient upon which to predicate plaintiffs' cause of action. That defendants sold to plaintiffs their own personal stock and not treasury stock is undisputed, and even though plaintiffs were put on notice as to some slight irregularities, such notice would not require them to investigate the truth of material representations. In *Conner* v. *Butler,* 113 Cal. App. 502, 513 [298 Pac. 546], the

court says: ''Knowledge on the part of the defendant of slight misrepresentations with respect to the price of lumber will not bar his right to rely upon the defense of fraud when other discrepancies exist which are so much more serious, such as the character and value of the notes and accounts, and the quantity and grades of the lumber on hand. In 12 California Jurisprudence, page 761, section 35, it is said:

'' 'Where one conducts an investigation, he may still be entitled to rely upon certain representations as to conditions to which the investigation does not extend.' '' Also, see *Fuhrman* v. *American Nat. B. & L. Assn.*, 126 Cal. App. 202, 213 [14 Pac. (2d) 601].

In the case of *Victor Oil Co.* v. *Drum,* 184 Cal. 226, at 241 [193 Pac. 243], the court said:

''The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part. The present case is not of that character.''

As stated in the beginning, the primary question presented in this case is the sufficiency of the allegations of the complaint to state a cause of action. We find the complaint sufficient, and the allegations are amply sustained by the evidence. We find no prejudicial error in any remarks of the trial court called to our attention. Although a number of instructions are severely criticized, we find no prejudicial error in any, and the charge as a whole states the law. Under such circumstances the judgment must be sustained. (Art. VI, sec. 4½, Constitution of California; *Douglas* v. *Southern Pacific Co.,* 203 Cal. 390, 396 [264 Pac. 237]; *Clark* v. *McClurg,* 215 Cal. 279, 285 [9 Pac. (2d) 505, 81 A. L. R. 908]; *Halberstadt* v. *Nielsen,* 113 Cal. App. 313 [298 Pac. 37].)

The evidence sustains the damages found by the general verdict of the jury, and it will not be presumed that the jury in arriving at its verdict considered elements not alleged in the complaint. (*Crosett* v. *Whelan,* 44 Cal. 200;

*Cody* v. *Market St. R. Co.,* 148 Cal. 90 [82 Pac. 666]; *Blackwell* v. *American Film Co.,* 189 Cal. 689 [209 Pac. 999].)

The judgment is affirmed.

Doran, J., concurred.

ROTH, J., *pro tem.,* Dissenting.—I dissent. In my opinion, the amended complaint shows on its face, and the evidence demonstrates as a matter of law, that the plaintiffs' claim is barred by the statute of limitations. (Code Civ. Proc., sec. 338, subd. 4; *Haley* v. *Santa Fe Improvement Co.,* 5 Cal. App. (2d) 415 [42 Pac. (2d) 1078] [hearing denied by Supreme Court]; *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809]; *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268]; *Redpath* v. *Aagaard,* 217 Cal. 63, 66 [16 Pac. (2d) 998]; *Wheaton* v. *Nolan,* 3 Cal. App. (2d) 401 [39 Pac. (2d) 457]; *Lopez Canyon Oil Co.* v. *Lofquist,* 136 Cal. App. 115 [28 Pac. (2d) 76]; *Security Commercial etc. Bank* v. *Seitz,* 43 Cal. App. 353 [185 Pac. 188].)

In the leading case of *Lady Washington C. Co.* v. *Wood, supra,* the court says at pages 486, 487:

" . . . whether there has been a 'discovery of the facts constituting the fraud', within the meaning of the statute of limitations, *is a question of law to be determined by the court from the facts pleaded . . . and, as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances* which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts. These principles are so fully recognized that mere reference to some of the cases in which they have been enforced will be sufficient. (*Martin* v. *Smith,* Fed. Cas. No. 9164, 1 Dill. 85; *Wood* v. *Carpenter,* 101 U. S. 135 [25 L. Ed. 807]; *Hecht* v. *Slaney,* 72 Cal. 363 [14 Pac. 88]; *Moore* v. *Boyd,* 74 Cal. 167 [15 Pac. 670]; *Lataillade* v. *Orena,* 91 Cal. 565 [27 Pac. 924, 25 Am. St. Rep. 219].)" (Italics ours.)

In short, before a party will be allowed to say that he discovered fraud on a date which occurred more than three years after a transaction, "It must appear that it could not have

been made by the exercise of reasonable diligence; and all that reasonable diligence could have disclosed plaintiff is presumed to have known, means of knowledge in such a case being equivalent of the knowledge which it would have produced." (*Montgomery* v. *Peterson*, 27 Cal. App. 671 [151 Pac. 23].)

From the allegations of the amended complaint excerpted in the majority opinion, it affirmatively appears:

(1) That the company ceased paying dividends within one year after the stock was purchased;

(2) That plaintiffs loaned $7,000 to the company early in the year of 1930;

(3) That assessments were levied upon stock including plaintiffs' stock before July of 1930, which plaintiffs paid in July of 1930 by allowing a credit to the corporation on account of the $7,000 loaned;

(4) That assessments were levied on stock periodically after July, 1930;

(5) That after July, 1930, and until January, 1931, plaintiffs "paid several assessments on this stock";

(6) That some time between July, 1930, and January, 1931 (the exact date not appearing from the pleadings), plaintiffs purchased from the corporation 16,844 shares of stock which were forfeited for nonpayment of assessments.

In addition, the evidence, which made clear the evasive allegations of the complaint, showed (a) that the corporation furnished no security for the $7,000 loan, but that the security which was furnished therefor belonged to H. C. Pressey; (b) that the cessation of dividends occurred some time before October, 1929 (the approximate date of the stock market crash); (c) that the shares of stock purchased by plaintiffs on defaulted assessments were purchased at two cents on the dollar.

Comparing these pleaded and demonstrated facts with the representations made, it is difficult to understand what obligation does devolve upon a reasonably prudent person in matters of this kind, if one were to say that such facts were not sufficient to prod a reasonably prudent person into some sort of inquiry. It would seem to me that, even to the unwary, these facts furnished an actual demonstration as to the falsity of representations 2, 3 and 5. It is an established

principle in fraud cases that where a plurality of representations has been made, and the falsity of one or more is discovered, the party defrauded is put on notice as to the probable falsity of others. (*Gratz* v. *Schuler*, 25 Cal. App. 117 [142 Pac. 899]; *Nicolaisen* v. *Toffelmier*, 97 Cal. App. 342 [275 Pac. 823]; *Ruhl* v. *Mott*, 120 Cal. 668 [53 Pac. 304].)

Further, it is my opinion that the italicized portion of the excerpted allegations from the amended complaint set forth in the majority opinion cannot be considered as statements or continuing promises which lulled the defendants into a sense of security, but that, to the contrary, said statements were of a nature which admitted that the original representations as to the nature of the stock were false, or were of such a character as would have placed a reasonably prudent man on inquiry, and that the effect of such statements was not to lull defendants into a sense of security, but rather to tell them that in spite of the fact that the stock was not all that it was represented to be, if said plaintiffs would continue to cooperate with Pressey that he, because he was taking over the management of the company, would see that they came out whole.

I, therefore, believe that the judgment should be reversed, and that the trial court should be instructed to enter a judgment for the defendants.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1936.

Thompson, J., and Nourse, J., *pro tem.*, voted for a hearing.