**In re Gerald L. OLSON and Merlene L. Olson, Debtors.**

**The TRAVELERS INSURANCE COMPANY, Petitioner,**

v.

**Gerald L. OLSON and Merlene L. Olson, Respondents.**

**Bankruptcy No. 185–02481.**

United States Bankruptcy Court, C.D. Illinois.

Dec. 23, 1987.

Barry M. Barash, Galesburg, Ill., for debtors.

David B. Radley, Peoria, Ill., for creditor.

OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The Debtors are farmers. Their schedules show they owe three secured creditors $481,411.00 and one unsecured creditor $100,000.00. The schedules also show farm land valued at $265,152.00 and personal property valued at $58,200.00. The claim of The Travelers Insurance Company, (CREDITOR) arises out of two loans to the Debtors. The first loan was in the original amount of $160,000.00 secured by first mortgage on 160 acres, with interest at the rate of 9–½% per annum, principal and interest to be repaid monthly, with a balloon coming due on June 1, 1993. The current amount due is approximately $150,-000.00. The second loan was originally in the amount of $260,000.00, secured by a first mortgage on 347 acres, with interest at 14–½%, monthly payments, and a balloon due June 1, 1996. The current amount due is approximately $271,000.00. At a previ-

ous hearing this court held the value of all the farm land to be $270,000.00. The CREDITOR holds a secured claim for $270,000.00 and an unsecured claim of approximately $151,000.00. The other two scheduled secured creditors are a bank which holds a second mortgage on the 347 acres and a farm equipment manufacturer which holds a first lien on a tractor.

The Debtors' Chapter 11 plan proposes to retain the farm land and paying the secured portion of the CREDITOR's claim over 30 years with 10% interest and paying 10% of the unsecured portion of the CREDITOR's claim, without interest, in 10 annual installments.[1] The Debtors propose to fund the plan through a $5,000.00 contribution and payments from farm income.

The CREDITOR objected to confirmation of the plan on two grounds. The CREDITOR contends the Debtors cannot amortize a short term debt over a long term period. The CREDITOR argues the thirty year period is beyond the life expectancy of the Debtor, Gerald Olson, the Debtors have not established the Debtors will have income thirty years in the future, and it cannot be assumed the Debtors will be farming in thirty years. The CREDITOR also contends the plan violates the absolute priority rule. The CREDITOR argues the Debtors cannot retain the farm land unless senior creditors are paid in full and the $5,000.00 contribution in new capital and the payments from farm income will not pay senior creditors in full.

This case can be decided by application of the absolute priority rule and therefore this Court need not rule on the CREDITOR's first contention that the Debtors cannot amortize a short term debt over a long term period. Furthermore, the application of the absolute priority rule is controlled by decisions of the Seventh Circuit Court of Appeals and the District Court for the Central District of Illinois.

The starting point for application of the absolute priority rule is the concept that if an unsecured creditor class rejects the plan, it can not be confirmed if it provides any participation at all to the old equity interests unless the dissenting class receives the equivalent of full payment. This is true even if the old equity interest is presently worthless. 1 Robert E. Ginsberg, *Bankruptcy*, Para. 13,607 (Prentice–Hall 1986). In *In re Stegall*, 86–1249 (Central District Illinois, 1987), the District Court had before it the issue of whether a farmer, with negative equity in farm land, by contributing labor and management, could reorganize under Chapter 11 and retain the farm without paying senior creditors in full. In affirming the bankruptcy court, the District Court first held the absolute priority rule was applicable and not satisfied. The District Court then went on to consider the issue of whether a contribution of labor and management was sufficient to bring the case within the new capital contribution exception to the absolute priority rule. In holding the exception was not applicable, the District Court, citing *In re Potter Material Service, Inc.*, 781 F.2d 99, stated:

"This exception permits the owner to retain an interest in the debtor estate where he or she invests new capital into the estate. The junior claim holder may then participate in the reorganization, but only to the extent of his or her new capital contribution.

The new capital investment must represent a substantial contribution that equals or exceeds the value of the retained interest in the estate. Further, the new capital investment must be a present contribution, not a contribution in the future." (Citations omitted)

In *In re Potter Material Service, Inc.*, *supra*, the court stated:

"The courts have recognized an exception, however, to this "absolute-priority" rule. An equity-interest owner may retain an interest in the debtor corporation so long as the owner invests new capital into the corporation. (Citations omitted) The new capital investment must (1) rep-

---

**1.** Based on this Court's valuation of the farm land, there is no equity in the 347 acres for the bank. The claims of the bank and the one scheduled unsecured creditor are to receive similar treatment to that of the CREDITOR's unsecured claim.

resent a substantial contribution and (2) equal or exceed the value of the retained interest in the corporation." (Citations omitted)

The Debtors' plan does not provide the dissenting class the equivalent of full payment. Therefore, unless the exception to the absolute priority rule is applicable, the Debtors' Chapter 11 plan cannot be confirmed. For the exception to be applicable the proposed contribution must meet two requirements. First, it must represent a substantial contribution, and second, it must equal or exceed the value of the Debtors' retained interest in the farm.

■ In *In re Stegall, supra*, the District Court held that the capital contribution had to be "up front" and could not be in the form of future payments from the operation of the farm. *See also In re Pecht*, 57 B.R. 137 (Bkrtcy.E.D.Va.1986). In the case before this Court the Debtors propose payment through the $5,000.00 contribution and income generated from the farming operation. As only the former payment meets the "up front" standard set forth in *Stegall* and *Pecht*, this Court need only determine if it meets the two requirements for application of the exception.

■ The decided cases have not developed guidelines to be considered in determining if a contribution of capital is "substantial" so as to satisfy Section 1129(b)(2)(B)(ii). In general, the word "substantial" is a relative one. *Atchison, T. & S.F.Ry.Co. v. Kings County Water Dist.*, 47 Cal.2d 140, 302 P.2d 1 (1956); *State v. Pahl*, 254 Minn. 349, 95 N.W.2d 85 (1959); *Robinson v. North Am. Life & Cas. Co.*, 215 Cal.App.2d 111, 30 Cal.Rptr. 57 (1963). It means something of value or worthwhile as compared to something without value or mere nominal value. *Bush v. Keystone Carbon Co.*, 211 Pa.Super. 422, 236 A.2d 231 (1967); *State v. Wieland*, 269 Wis. 262, 69 N.W.2d 217 (1955). The meaning of the word depends on the facts of each case and must be governed by the facts associated with the particular case at issue. *Busch v. Service Plastics, Inc.*, 261 F.Supp. 136 (N.D.Ohio 1966); *Fuhrman v. American Nat. Building & Loan Ass'n.*, 126 Cal.App.

202, 14 P.2d 601 (1932). In the context of this case, a mathematical formula cannot be devised because of the lack of certainty regarding the future value of the reorganized debtors. *Matter of U.S. Truck Co., Inc.*, 47 B.R. 932 (E.D.Mich.1985), *aff'd In re U.S. Truck Co., Inc.*, 800 F.2d 581 (6th Cir.1986). Nonetheless, this Court perceives the following considerations to be relevant in making the determination. Inasmuch as the application of the exception involves the relationship of the Debtors to the dissenting class, one factor to be considered is the amount of the contribution compared to the amount of unsecured debt due the dissenting class. In this case the $5,000.00 contribution amounts to a mere 3.33% of the approximate $151,000.00 due on the CREDITOR's unsecured claim and 1.56% of the approximate $320,000.00 due all unsecured creditors. This disparity alone militates against a finding the contribution is "substantial". Another factor to be considered is the amount of the write down of the Debtors' mortgage and the prospects of future changes to the value of the mortgaged farm land. The write down was sizeable and this Court notes that farm land prices have at least stabilized, with some indication that as to some farm land, prices have started a modest recovery from their recent losses. It would not be appropriate to permit the Debtors to retain the farm land, through a small payment, at a time when the value of farm land may be starting to increase. Through the good fortune of "timing" the Debtors would have the best of two worlds: a write down of their mortgage and increasing farm land value.

Turning to the second of the two requirements, this Court begins its analysis with a reference to the *Stegall* case. In that case the District Court stated:

"Further, the court finds it very difficult to believe that 200 acres of real estate, even in light of the recent plight of the farmers, is 'worthless'."

In this case, only a meager amount of evidence was presented as to the value of the Debtors' retained interest in the farm land. The CREDITOR presented no evi-

dence. The only evidence presented by the Debtors was that of Douglas Main, a paralegal employed by the Debtors' attorney. Mr. Main holds a decree in agriculture and has experience both as a farmer and as a paralegal, working with farmers in financial difficulty. Mr. Main testified that a farm has no value over and above the value of the assets, and in the Debtors' case the liabilities exceeded the assets and therefore there was no value to their retained interest in the farm. This evidence is not enough to overcome the District Court's and this Court's doubts as to validity of the assertion that farm land with a negative equity is worthless, and establish the $5,000.00 contribution equals or exceeds the value of the Debtors' retained interest in the farm.

In conclusion, this Court holds the absolute priority rule is not satisfied because the unsecured creditors are not receiving the equivalent of full payment, and the proposed payments do not meet the requirements for the new capital contribution exception to the absolute priority rule.

IT IS, THEREFORE, ORDERED that the Debtors' motion for confirmation is DENIED.