[L. A. No. 9515. Department One.—November 14, 1928.]

ARLY FOULKES NEFF, Respondent, v. WILLIAM F. ENGLER et al., Appellants.

Eugene T. McGann for Appellants.

Minor Moore for Respondent.

PRESTON, J.—Defendants appeal from judgment in favor of plaintiff in an action involving an alleged fraud on their part in accepting from plaintiff certain real property in exchange for a sum of money and some practically worthless stock.

The complaint, with its amendment, alleges that on February 4, 1925, plaintiff, the owner of said real property, which was of the reasonable value of $6,500, subject to a $1,700 mortgage, exchanged it for personal property owned by defendants as follows: $800 in cash and 400 shares of the preferred capital stock of Income Builders, Inc., a corporation, together with 500 shares of the common stock of said corporation held in escrow for their benefit. It further alleges that prior to said exchange, for the purpose of cheating and defrauding plaintiff, defendants made various statements to her, enumerating them, respecting said stock, which they knew to be false but which plaintiff believed to be true, and solely by reason of her reliance upon them consummated said exchange; that on April 17, 1925, plaintiff first discovered their falsity and knew of her right to rescind said contract of exchange; that thereafter, on April 23, 1925, she served notice and offer of rescission upon defendants. The amendment to said complaint alleges the suppression by defendants from plaintiff of certain facts known to them relative to the condition of said corporation; the complaint is in two counts, one stating a cause of action for rescission, the other for damages in the sum of $5,100. During the trial plaintiff elected to stand on her action for fraud and dismissed the first count in so far as it concerned rescission.

The court found that the reasonable value of plaintiff's said property did not exceed $5,500, subject to said $1,700 mortgage; that on February 4, 1925, the parties entered into the said agreement of exchange; that defendants did not make all of the untrue statements alleged, specifying them; that they did not state that said stock was bonded,

secured, or guaranteed by the state of California, but that plaintiff understood their statements to mean that said stock was guaranteed by the state of California; that, however, prior to said exchange, for the purpose of cheating and defrauding plaintiff, defendants did state to her that said preferred stock was then worth $3,200 and that they were receiving and had been paid semi-annually dividends on it at the rate of eight per cent per annum, which statement was, and defendants knew it was, untrue, but that plaintiff believed and relied upon it and solely by reason of such reliance agreed to said exchange; that at the time said statement was made said corporation had issued and outstanding $108,070 of its capital stock, and owed about $500 in accounts payable, while its assets consisted of not to exceed $1,800 in money and $14,208 in unsecured accounts and notes receivable, which were for balances due by subscribers to the preferred stock of said corporation, it being extremely probable that no portion thereof would ever be paid; that defendants did not suppress such facts from plaintiff, but that they knew in part of the financial condition of said corporation and by the exercise of ordinary care, reasonable diligence and prudence, could have ascertained all said facts; that if said statement made by defendants had been true, said stock would have been worth $3,200, but that its actual value, based on said assets, did not exceed $200; hence, by reason of said false statement, plaintiff was damaged in the sum of $3,000. Judgment accordingly went for plaintiff, awarding her $3,000 as damages, with interest from April 24, 1925, and defendants have appealed.

Appellants make two main contentions: first, that the complaint, with the amendment, does not state facts sufficient to constitute a cause of action, and, second, that the evidence does not sustain the findings and judgment. Further, they contend that the court below abused its discretion in overruling their demurrer to said amendment, in denying motion for nonsuit, and that the judgment is excessive and contrary to law.

The attack upon the complaint is unfounded. It contains all the essential averments of a pleading which seeks to charge fraud. (See 12 Cal. Jur., p. 806, sec. 64, and cases there cited.) It alleges in detail the fraudulent

representations; it alleges that they were false and such falsity was known to defendants; that they were made with intent to induce plaintiff to enter into the transaction, and were relied upon by her as true, to her injury. It likewise shows on its face reasonable diligence on the part of plaintiff in discovering the facts constituting the fraud and in instituting her action, in that less than two and a half months elapsed between the date of the agreement and the discovery of the fraud and the complaint was filed a week later. ■ However, such a showing is not essential to a statement of the cause of action for damages. In applying the doctrine of laches after discovery of the fraud, where suit is brought within the statutory period, a distinction exists between an action in which relief is sought by way of rescission and an action for damages. Where rescission is sought, the party defrauded, as a condition of his right to rescind, must act promptly upon discovery, while in seeking damages based upon the fraud under ordinary circumstances, and where no prejudice is shown to have resulted from the delay, he probably has the right to institute and maintain his action at any time within said statutory period after his discovery of the fraud. This subject is fully considered in *Victor Oil Co.* v. *Drum,* 184 Cal. 227, 242, 243 [193 Pac. 243]. (See, also, *Estudillo* v. *Security Loan etc. Co.,* 149 Cal. 556, 565 [87 Pac. 19].)

■ It would appear from the evidence that appellants deliberately took advantage of plaintiff's credulity and general unfamiliarity with commercial transactions to secure in haste her final consent and signature during the absence of her husband, who had theretofore expressed his disapproval of the contemplated exchange, and at a time when she was ill at home and in no proper condition to negotiate or investigate the matter further. Their conduct cannot be excused upon the ground that plaintiff should not have believed said representations, which were mere expressions of opinion in the nature of trade talk, but that she should have prosecuted inquiries on her own behalf and would then have found them to be untrue.

The rule in this respect is well stated in *Dow* v. *Swain,* 125 Cal. 674, 682, 684 [58 Pac. 271], where the facts are similar to those of the instant case. That action was one to rescind an exchange of land for foundry stock upon the

ground that the plaintiffs were induced to make said exchange solely by reliance upon materially false and fraudulent representations of fact by defendants as to the solvency, profits, and assets of the corporation owning the foundry, value of the stock, etc. The court said: "The plaintiffs were not put on inquiry by having their suspicions so aroused that it was negligence on their part not to inquire further, and it also appears that they did not in fact rely upon any examination made by themselves—if it can be held that they made any. It is quite obvious that the plaintiffs in this case did not make an examination for themselves, or attempt to do so. Defendants knew that they were utterly incapable of so doing, except, as the court finds, by the employment of experts. . . . 'It is now settled law that one who chooses to make positive assertions without warrant will not excuse himself by saying that the other party need not have relied upon them. He must show that his representations were not in fact relied upon. . . . ' (Webb's Pollock on Torts, 378, and see note, where numerous authorities are cited.) In Bishop on Noncontract Law, section 330, it is said: That plaintiff is too credulous is not generally a defense. 'The test of the representation is its actual effect on the particular mind, whether it is a strong and circumspect mind, or one weak and too relying.' (See, also, Bigelow on Frauds, 524.) 'Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith.' (*Mead* v. *Bunn,* 32 N. Y. 275.) . . . " (To the same effect, see *Teague* v. *Hall,* 171 Cal. 668 [154 Pac. 851]; *DeGarmo* v. *Petitfils Confiserie,* 93 Cal. App. 261 [269 Pac. 692]; *Spreckels* v. *Gorrill,* 152 Cal. 383, 395 [92 Pac. 1011]; *Tracy* v. *Smith,* 175 Cal. 161 [165 Pac. 535].)

 ▌ Of course, mere expressions of opinion honestly made are not actionable, but a false statement of an opinion expressed to one entitled to rely upon it and professedly based upon alleged facts known to the party stating them, may form the basis of an action just like any other misrep-

resentation of fact (*Stockton* v. *Hind*, 51 Cal. App. 131, 137 [196 Pac. 122], and cases therein cited). "Matters which might otherwise be only expressions of opinion, when stated as accomplished facts by one of the parties to a contract and accepted and relied upon by the other as such, may, and often do, become the basis of actions for fraudulent misrepresentations." (*Sheer* v. *Hoyt*, 13 Cal. App. 662 [110 Pac. 477]; *Bickel* v. *Munger*, 20 Cal. App. 633 [129 Pac. 958]; *Tracy* v. *Smith*, *supra*, at p. 164 of 175 Cal. [165 Pac. 535]; *Stirnus* v. *Adams*, 50 Cal. App. 730 [195 Pac. 955].)

There is contained in the record here competent and persuasive evidence in support of the findings and judgment. As might be anticipated in a case of this character, the testimony is in conflict as to whether defendants made the representations charged against them, but there is nevertheless sufficient evidence of a tangible character to uphold the conclusions of the trial court, to meet the requirements as to the degree of proof required to support findings of fraud, and to establish the misrepresentations found by the court to have actually been made. Discussion with respect to certain immaterial findings is unnecessary.

A plaintiff is not required to prove that all the specifications of fraudulent representations are true. As said in *Davis* v. *Butler*, 154 Cal. 623, 626 [98 Pac. 1047, 1048], "A single material misstatement, knowingly made with intent to influence another into entering into a contract, will, if believed and relied on by that other, afford as complete ground for rescission as if it had been accompanied by a multitude of other false representations." (See, also, *Thomas* v. *Hacker*, 179 Cal. 731, 733 [178 Pac. 855]; *Fisher* v. *Brotherton*, 82 Cal. App. 532, 538 [255 Pac. 854].)

It is demonstrable from the record that said judgment is not excessive. Defendants received from plaintiff property valued by her at $6,500 and found by the court to be of the value of $5,500, subject to a $1,700 mortgage. Plaintiff received from defendants stock represented to be of the value of $4,000 and $800 in cash. Deducting from said amount of $4,000 said cash payment, and also $200, the actual value placed upon said stock by the court, leaves $3,000, the sum awarded plaintiff as damages, with interest.

As the evidence, which includes the financial sheet of the corporation, showed how problematical it was that anything could ever be realized on the stock, the amount awarded plaintiff was plainly just.

We have examined all the points made by appellants and find that none of them have merit. The judgment is affirmed.

Curtis, J., and Seawell, J., concurred.