[Civ. No. 3841.  Third Appellate District.—April 2, 1930.]

H. W. SMITH, INC. (a Corporation), Appellant, v. P. J. SWENSON, Respondent.

Fabian D. Brown for Appellant.

George F. Jones for Respondent.

FINCH, P. J.—The plaintiff brought this action to recover the amount of three promissory notes given by the defendant to The A. Meister Sons Company in part payment of the purchase price of thirty shares of the capital stock of that company. The only defense relied on by the defendant is that he was induced to purchase the stock by fraudulent representations made to him by the company and its agent, John Blackburn. Judgment was entered in favor of the defendant and the plaintiff has appealed.

█ The trial court submitted special issues to the jury, but no general verdict was returned. Appellant contends that this was error. The plaintiff did not demand a jury. At the beginning of the trial the court announced that only special issues would be submitted to the jury. Neither party made any objection to the procedure announced and therefore it must be held that the objection here urged by the appellant was waived by the plaintiff's acquiescence at the trial. (*Dyer Bros. G. W. I. Wks.* v. *Central I. Wks.*, 72 Cal. App. 202, 205 [237 Pac. 386].) █ The special issues seem to cover all matters in controversy and therefore the plaintiff's rights were in no manner prejudiced by the course pursued.

█ It is urged that there is no proof that Blackburn was the agent of the company. In the early part of December, 1922, the defendant, who then owned fifteen shares of the capital stock, received a letter from the company containing, among other statements, the following:

"Your dividend check will be delivered to you by my personal representative, whom I am sending not only to deliver to you your check, but to tell you the 'How and Why' of the success of your company. . . . Your board of directors are about to take under consideration the matter of increasing our shares from a price of $100 per share to a price of $125 per share. This action is due to the profits earned as well as to the increase in assets in the form of future work already contracted for. . . . This advance in price would be very beneficial to your present holdings and we want you to be fully advised relative to same."

A few days after the receipt of this letter by the defendant, Blackburn appeared with the defendant's dividend check and induced him to purchase the stock involved in this action. The company accepted the defendant's promissory notes and issued the stock which Blackburn had sold to him, but the stock was not delivered. There is no substantial contradiction of the foregoing evidence relating to Blackburn's authority and the logical inference therefrom is that he was the authorized agent of the company. Certainly such evidence warrants an inference of ostensible agency.

█ The jury found that Blackburn fraudulently represented to the defendant "that The A. Mcister Sons Company

was doing a tremendous business and that said company had the money available to do so and would declare a 15 per cent dividend on its capital stock in February, 1923." The court adopted the findings of the jury and made additional findings, one of which is that Blackburn represented "that in February, 1923, there was to be a special dividend declared." There is not sufficient evidence to sustain the finding that the company was not doing a tremendous business, but there is ample evidence to show that Blackburn represented that the company "would declare a 15 per cent dividend . . . in February, 1923," and that such representation was untrue. The defendant testified that Blackburn said that such dividend "was already voted" and that "it was to be declared in February." It is unnecessary to consider the technical distinction, if any, between "voting" a dividend and "declaring" one. The plain inference from the representation in question is that the company had definitely decided to declare a dividend of fifteen per cent in February, 1923. The evidence shows that the board of directors of the company, at its meeting in November, 1922, discussed the question of declaring a dividend in February, 1923, but came to no conclusion in the matter, and that at the February meeting it was decided not to declare a dividend. The only dividend the stockholders ever received was the one declared at the meeting of the board in November, 1922, the defendant's share of which was represented by the check in Blackburn's possession when he sold the thirty shares of stock to the defendant.

Appellant contends that Blackburn's statement to the defendant was a "promissory representation rather than a statement of fact." The representation, however, related to matters peculiarly within the knowledge of the company and of which defendant was without knowledge. The statement that there would be a second dividend of fifteen per cent in three months after the one of four per cent had been declared implied that the speaker was in possession of knowledge upon which to base the assertion and, if believed, constituted a persuasive selling point, as it was doubtless intended. It is a matter of daily observation that the publication of a statement that a corporation will, at a stated future time, declare a large dividend is accepted by the buying public as the statement of a fact

and results in a great increase in sales of the corporation's capital stock. Such a statement is designed to create the belief that it is based upon facts within the knowledge of the person making it, and, after he has accomplished the designed purpose, he ought not to be permitted to escape liability on the mere ground that his fraudulent statement is not a representation of fact. "The fact that statements relate to the future will not preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter peculiarly within the speaker's knowledge." (26 C. J. 1090.) The representation under consideration is similar in principle to that involved in *California C. & C. Corp.* v. *Carpenter,* 77 Cal. App. 18, 28 [246 Pac. 126, 130], wherein it is said that the representation that a packing plant would be located at Sacramento was "the representation of a material existing fact—the fact that the determination had then been fixed upon by the packing company to establish a packing house and stockyards at Sacramento." (See, also, *Russ Lumber & Mill Co.* v. *Muscupiabe Land & Water Co.,* 120 Cal. 521, 529 [65 Am. St. Rep. 186, 52 Pac. 995], and *California Credit etc. Corp.* v. *Goodin,* 76 Cal. App. 785, 796 [246 Pac. 121].) The rule to be applied in a case such as this is analogous to that applicable where the issue is whether a given statement is a representation of fact or a mere expression of opinion. "It is the general and well-settled rule that when a representation concerning the subject matter of a transaction which might, ordinarily, be only the expression of an opinion is asserted as an existing fact, material to the transaction, and which has a reasonable tendency to induce one of the parties to the transaction to consider and rely upon such representation as a fact, the statement then becomes an assertion of an existing fact within the meaning of the general rule as to fraudulent representations." (*Harris* v. *Miller,* 196 Cal. 8, 13 [235 Pac. 981, 983] ; *Neff* v. *Engler,* 205 Cal. 484 [271 Pac. 744] ; *Antognini* v. *Grandi Co.,* 89 Cal. App. 628 643 [265 Pac. 378] ; *Davis* v. *Monte,* 81 Cal. App. 164, 171 [253 Pac. 352] ; *Haserot* v. *Keller,* 67 Cal. App. 659, 670 [228 Pac. 383].)

■ Appellant contends that the defendant has been guilty of such laches as to bar his right to set up the defense of fraudulent representations. The contention is with-

out merit. (*Neff* v. *Engler, supra; J. B. Colt Co.* v. *Freitas,* 76 Cal. App. 278, 287 [244 Pac. 916].)

■ June 26, 1924, The A. Meister Sons Company was adjudged a bankrupt. Thereafter the trustee in bankruptcy sold all the assets of the company to Feigenberg Bros. Feigenberg Bros. assigned the promissory notes in suit to C. R. Woodruff, who was assistant to the president of the company at the time the notes were executed. Woodruff assigned the notes to the plaintiff for collection. Over the plaintiff's objection, the court admitted evidence to the effect that Woodruff had assigned the notes to the plaintiff for collection on the percentage of "fifty-fifty." Appellant urges that it was error to admit such evidence. Woodruff was an important witness in the case and it was material to show that he was financially interested in the outcome of the suit.

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.