[Civ. No. 7693. First Appellate District, Division One.—June 29, 1931.]

FIRST MORTGAGE CORPORATION (a Corporation), Plaintiff and Appellant, v. ALBERT BECK, Respondent; GUARDIAN INVESTMENT CORPORATION OF CALIFORNIA (a Corporation), Cross-Defendant and Appellant.

Lewis Cruickshank for Appellants.

Joseph Scott and A. G. Ritter for Respondent.

MURPHEY, J., *pro tem.*—This is an action based upon a promissory note made, executed and delivered by the defendant to the plaintiff on the seventh day of July, 1926, due on or before thirty days after date. At the same time and place, plaintiff delivered to defendant a receipt in the following words:

"Received of Albert Beck Seventy Five Thousand Dollars. Evidenced by a promissory note of even date due in thirty days. It being understood that we will accept in lieu of said note, contracts on lots or orange groves that are worth one hundred cents on the dollar from a loan standpoint. Provided said contracts are offered for exchange on or before thirty days and draw interest at not less than seven per cent. (Marked out—C. W. Harrison.)

"First Mortgage Corporation.
"By (Sgd) C. W. Harrison, Gen'l. Mgr."

The promissory note and the property named in the receipt were given and received according to the plaintiff's contention for 600 shares of common and 600 shares of preferred stock of the Guardian Investment Corporation, cross-defendant and appellant in this case. The record shows that no stock was ever delivered to the defendant Beck. The record discloses that the negotiations leading up to the actual business transaction so far as the plaintiff corporation and the Guardian Investment Corporation are concerned were handled by Harrison representing both corporations. In the course of the transaction Beck urged thereto by Harrison had not only delivered to him the promissory note, but also deeds and contracts of the value of $75,000 as claimed by Beck and $40,000 claimed by Harrison. The

transaction involving the delivery of the promissory note and the receipt hereinabove referred to was consummated after office hours on the date of their execution. There was an actual passing by way of consideration from plaintiff to the defendant of nothing other than the papers involved in the transaction. It may be said that the circumstances of the entire transaction are enveloped in an atmosphere of dissimulation not at all creditable to the corporations represented in the transaction by Harrison.

■ The court found, and the true history of the events are reflected in the findings, as follows:

"That it is not true that at the time of the execution and delivery of said promissory note that defendant deposited or pledged with the plaintiff herein as collateral security for the payment thereof, or otherwise, or at all, the following described property, or any part thereof, to wit: Six Hundred (600) shares of preferred stock of Guardian Investment Corporation of Califorⁿa, evidenced by Certificate No. 76; or Six Hundred (600) shares of common stock of Guardian Investment Corporation of California, evidenced by Certificate No. 57; or any stock of said corporation, or any certificate, or any other property of any kind or nature, whatsoever, or at all. . . .

"That said plaintiff gave no consideration of any kind to defendant for said note, and never became the owner of said note; that defendant has never received any consideration of any kind for said note. . . .

"That . . . said note as set forth in said complaint was given to said plaintiff solely for the purpose of said plaintiff holding the same as escrow holder as the agent of said defendant until said defendant should deposit with said plaintiff certain property belonging to defendant in lieu of said promissory note; that it was at all times understood and agreed by and between plaintiff and said defendant that said note was held and to be held by said plaintiff solely for said purpose, and was to be returned to said defendant upon demand in case said escrow was not completed, or in case said defendant did not deliver to said plaintiff said property to be deposited with said plaintiff in lieu of said note; that thereafter said defendant did deposit with said plaintiff all the said personal and real property hereinabove referred to. . . .

264

"That thereafter, and on or about the 13th day of August, 1926, said cross-complainant deposited with said cross-defendant deeds to said real property, and assignments of said contracts, except said Mazetti contract, but that at said time said cross-complainant at the request of said cross-defendant made and executed a deed to said property covered by said Mazetti contract. . . . That at the request of said cross-defendant, First Mortgage Corporation, said deeds and assignments of contract were executed by the cross-complainant in the name of Guardian Investment Corporation of California. That thereupon said First Mortgage Corporation caused to be recorded said deeds without authority or permission of said cross-complainant and retained said assignment of contract and refused, and has at all times refused to return the same to said cross-complainant. . . .

"That it is true that on or about the 7th day of July, 1926, said cross-defendants First Mortgage Corporation and Guardian Investment Corporation of California, wrongfully, fraudulently and unlawfully represented to said cross-complainant that if cross-complainant would make and execute to said First Mortgage Corporation his promissory note in the sum of $75,000, and would thereafter deposit with said First Mortgage Corporation certain deeds and contracts to real property owned by said cross-complainant and hereinafter described, that said First Mortgage Corporation thereupon, upon the deposit of said deeds and contracts, would return to said cross-complainant said promissory note, and would retain and keep said deeds and said assignments of contracts, and in exchange therefor would give to said cross-complainant Six Hundred (600) shares of common and Six Hundred (600) shares of preferred stock of Guardian Investment Corporation of California, and that upon delivery of said stock to said plaintiff said cross-complainant would become the owner of said stock and said cross-defendant would become the owner of said real estate and said contracts for the sale of said real estate, and that in addition thereto said cross-defendant would cause said cross-complainant to be elected a member of the board of directors of said Guardian Investment Corporation of California; that said real property and said contracts are described as follows, to wit: . . ."

Then follows a description of the contracts not necessary to be included herein.

"That it is true that said cross-complainant never at any time received from said cross-defendants, or either of them, any of said stock in said corporation, and never was made or elected a director of said corporation, or received said Two Hundred and Fifty shares of stock, or anything of value, whatsoever from said cross-defendants or any of them for said promissory note or said property, and that said promissory note and said property were received by said cross-defendants without any consideration of any kind whatsoever, and that said cross-complainant was induced by said cross-defendants to turn over said promissory note and property to said cross-defendants by reason of the false and fraudulent statements of said cross-defendants hereinabove referred to. . . .

"The court finds that it is not true that said cross-defendant, First Mortgage Corporation, was to receive property and contracts satisfactory and acceptable to said cross-defendant, First Mortgage Corporation, in return for said promissory note, but that it is true that it was agreed between said cross-defendant and said cross-complainant that said cross-defendant should return said promissory note upon receiving said deeds and contracts and assignments of contracts hereinbefore described.

"That it is not true that said cross-complainant ever at any time pledged any property with said cross-defendant First Mortgage Corporation, or either of said cross-defendants, to secure the payment of said promissory note.

"That it is not true that cross-complainant at any time instructed the Guardian Investment Corporation of California for or in his behalf, or at all, to record said deeds hereinabove described and referred to, or either of them, or otherwise or at all."

That there should be and are contradictions in the record with respect to the questions of fact involved in this litigation, as reflected in the findings herein set out, goes without saying, nevertheless there is abundant evidence in the record to fully sustain the findings of the trial court. A careful consideration of the entire record has convinced us that there is no substantial merit in the appeal of the plaintiff or cross-defendant.

In so far as the law of the case is concerned, appellant has written an elaborate dissertation on fraud, rescission, alternative demands, modification of contracts, but has not assisted the court by making or attempting to make any application of the principles of law thus discussed, to the facts of the instant case, and we are satisfied after reading the cases cited and from our knowledge of the facts as adduced by the evidence in this case no application favorable to the contention of the corporations, parties to this litigation, is possible. There is no duty incumbent upon the appellate courts to assume this burden and this is particularly so under the facts and circumstances developed in this case, as any such effort, as above indicated, must necessarily prove futile and fruitless. As is well said in the case of *Neff* v. *Engler*, 205 Cal. 484 [271 Pac. 744, 747]: "There is contained in the record here competent and persuasive evidence in support of the findings and judgment. As might be anticipated in a case of this character, the testimony is in conflict as to whether defendants made the representations charged against them, but there is nevertheless sufficient evidence of a tangible character to uphold the conclusions of the trial court, to meet the requirements as to the degree of proof required to support findings of fraud, and to establish the misrepresentations found by the court to have actually been made."

In this case the rescission was promptly made and the misrepresentations substantial and the deal was actually consummated through the activities of and with the knowledge of both plaintiff and the cross-defendant.

No error appearing in the record, the judgment is affirmed.

Knight, J., and Tyler, P. J., concurred.