Filed 6/25/14  Graves v. Bank of America CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| GENE GRAVES et al., | C074059 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV30645) |
| v. | |
| BANK OF AMERICA, N.A., et al., | |
| Defendants and Respondents. | |

In this action, plaintiffs Gene and Wendy Graves sued defendants Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc. (MERS) for damages and prevention of the nonjudicial foreclosure sale of their home.  The trial court sustained defendants' demurrer without leave to amend.  On appeal, we conclude the trial court's ruling was proper except in one respect:  the court erred in sustaining the demurrer to plaintiffs' cause of action under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) because plaintiffs adequately alleged that Bank of America's predecessor-in-interest, Countrywide Home Loans Servicing, LP (Countrywide), committed an unlawful

1

business act by inducing plaintiffs to enter into a construction loan by falsely representing the permanent loan options that would be available to plaintiffs at the end of construction, thereby causing plaintiffs to pay higher interest than they otherwise would have paid. Accordingly, we will reverse.

FACTUAL AND PROCEDURAL BACKGROUND

We take the following facts from the allegations of plaintiffs' first amended complaint, supplemented by documents that were appended to the original complaint.

In August 2006, plaintiffs contacted Mark Welch, a loan officer with Countrywide, about obtaining a construction loan. Welch told them about the "One Time Close" loan that Countrywide was offering. According to Welch, when it came time for the construction loan to become permanent, there would be many options available for plaintiffs to choose from, including a 40-year loan with 10 years of interest-only payments and an interest rate of 4.25 percent.

Plaintiffs subsequently applied for, and were approved for, the "One Time Close" loan, and the loan closed in October 2006. The adjustable rate note, which was for the principal sum of $1,087,500, provided for an initial interest rate of 6.375 percent and for a maximum interest rate of 12.375 percent. Plaintiffs used the loan proceeds to construct a residence for themselves in Granite Bay.

In October 2008, at the end of the construction phase, plaintiffs received a monthly statement showing that their loan had converted to "a 30 year Jumbo adjustable rate mortgage." They contacted Countrywide to ask why they were not given any options to choose from with respect to the permanent financing. The representative told them there were no other options available from Countrywide, but they were free to obtain their own permanent financing elsewhere. The representative further told them to just sign the modification agreement so that the loan would fund, and then Countrywide would work with them to modify their loan. According to the representative, they had to sign the modification agreement before they could request a further modification.

2

At this time, plaintiffs had received two offers to purchase the house they had built -- one for $1.4 million and another for $1.5 million. In reliance on Countrywide's promises, they chose not to sell. Instead, they immediately began trying to work with Countrywide on a loan modification, but all of their attempts from November 2008 through October 2009 "were to no avail."

Plaintiffs fell into arrears on their loan payments. In November 2011, Recontrust was substituted in place of Chicago Title as trustee under the deed of trust. There is no affidavit of mailing attached to the substitution of trustee that was recorded on the property on November 14, 2011. The same day the substitution of trustee was recorded, a notice of default and election to sell under deed of trust was also recorded on the property by Recontrust. The notice of default indicated that plaintiffs needed to pay more than $300,000 to cure the default.

In February 2012, plaintiffs commenced this action by filing a complaint against Bank of America and MERS, asserting causes of action for fraud, reformation of an unconscionable contract, wrongful foreclosure, and unlawful business practices. Bank of America and MERS (jointly, defendants) demurred, and plaintiffs responded by filing a first amended complaint in October 2012 that purported to add a cause of action for equitable estoppel. Defendants demurred again.

In March 2013, the trial court sustained defendants' demurrer without leave to amend. The court concluded the fraud cause of action was time-barred to the extent it was based on what Welch told plaintiffs in August 2006 because plaintiffs knew by October 2008 -- more than three years before they commenced their action -- that his statement about the availability of other loan products was false. To the extent the fraud cause of action was based on what plaintiffs were told in October 2008 -- that Countrywide would work with them to modify their loan further -- the court concluded that statement was not actionable because it was "not a promise of any particular result,"

3

and "[s]tatements of opinion and speculation about future events cannot serve as a predicate for a fraud action."

The court concluded that the reformation cause of action was likewise time-barred and also that "[u]nconscionability is not a proper basis for reformation of a contract."

On the wrongful foreclosure cause of action, the court concluded that the notice of default was valid "since the trustee under the deed of trust is not required to execute a notice of default," and plaintiffs had failed to allege prejudice from the purported deficiencies in the foreclosure proceeding.

The court concluded that the unlawful business practices cause of action did not state a valid cause of action because it was predicated on the other causes of action, which the court had already rejected.

Finally, the court concluded the equitable estoppel cause of action was deficient because plaintiffs did not seek to estop defendants from anything but instead merely sought money damages.

Because plaintiffs had failed to make any showing that the complaint could be amended to change its legal effect, the court sustained the demurrer without leave to amend. From the resulting judgment of dismissal, plaintiffs timely appealed.

DISCUSSION

I

*Standard Of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff

4

has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) "[T]he burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.)

## II

### *Fraud*

In their opening brief, plaintiffs do not attempt to challenge the trial court's conclusion that their cause of action for fraud is time-barred to the extent it was based on the representation by Welch in August 2006 regarding the availability of other loan products. Instead, their entire argument as to fraud is based on the later statement by the Countrywide representative in October 2008 that Countrywide would work with plaintiffs to modify their loan. According to plaintiffs, this statement should be actionable because Countrywide "possessed superior knowledge with respect to the funding of mortgage loans and because [Countrywide] knew [plaintiffs'] financial situation." "Put another way, that Defendants made such promises, but later foreclosed on the Subject Property, demonstrates no true intention on Defendants' part to work with Plaintiffs."[1]

A promise made without the intent to perform can provide the basis for a claim of promissory fraud where the promisee reasonably relied on the promise and suffered resulting damage. (See *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060; *Conrad v.*

---

[1] When necessary, our use of the word defendants encompasses not only Bank of America and MERS, but also Countrywide, which plaintiffs alleged was a predecessor in interest of Bank of America.

*Bank of America* (1996) 45 Cal.App.4th 133, 155-156.) In such a case, "the falsity of th[e] promise is sufficiently pled with a general allegation the promise was made without an intention of performance." (*Beckwith*, at p. 1060.) Mere failure to perform a promise, however, is not sufficient to show fraudulent intent. (*Conrad*, at pp. 156-157.)

This latter principle dooms plaintiffs' argument that defendants' foreclosure on the property, after promising to work with plaintiffs to modify their loan, demonstrates that defendants had "no true intention . . . to work with Plaintiffs." In other words, to state a cause of action for promissory fraud, it was not sufficient for plaintiffs to plead that defendants foreclosed after promising to work with them on a loan modification. Instead, plaintiffs had to plead that: (1) defendants did not intend to work with plaintiffs to modify their loan *at the time* defendants said they would work with plaintiffs; and (2) defendants thereafter did, in fact, refuse to work with plaintiffs to modify their loan.

The first amended complaint contains no such allegations. Initially, plaintiffs alleged that although they tried to work with Countrywide on a loan modification, "[a]ll attempts by Plaintiffs from November 2008 through October 2009, were to no avail." This allegation is by no means the equivalent of alleging an *intent not to perform at the time the promise was made*, especially since the complaint offers no reason why plaintiffs' attempts at loan modification "were to no avail."

Later, plaintiffs allege that they "were unable to ever obtain a modification that was anywhere close to the terms promised by WELCH*,* in fact the only modification ever offered by COUNTRYWIDE actually increased Plaintiffs' payments." This allegation is telling because it tends to show that Countrywide actually *did* work with plaintiffs to modify their loan, even if the result of that attempt was not what plaintiffs wanted. Countrywide's promise to work with plaintiffs could not have been false if Countrywide actually engaged in efforts to modify plaintiffs' loan.

Finally, in the fraud cause of action itself, while plaintiffs expressly alleged that Welch made his statements to plaintiffs in October 2006 knowing the statements were

6

false and intending to deceive plaintiffs, there was no equivalent allegation with respect to the promise made by the Countrywide representative in October 2008 to work with plaintiffs on a loan modification.

To the extent plaintiffs rely on *Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, their reliance is misplaced because in *Aceves* the complaint specifically alleged that "U.S. Bank never intended to work with Aceves to reinstate and modify the loan. The bank so promised only to convince Aceves to forgo further bankruptcy proceedings, thereby permitting the bank to lift the automatic stay and foreclose on the property." (*Id.* at pp. 222, 224.) No similar allegation appears in plaintiffs' complaint.

Based on the foregoing, we find no error in the trial court's determination that the first amended complaint failed to state a timely cause of action for fraud. The question that remains is whether plaintiffs have shown that they can amend their complaint to change its legal effect.

In their opening brief, plaintiffs contended they "should be afforded an opportunity to amend," but they did not say *how* they would amend their complaint if given an opportunity to do so. Obviously this is not sufficient to carry their burden.

In their reply brief, plaintiffs assert that they can amend their complaint to allege that from November 2008 through October 2009, defendants "refused to cooperate in any manner and at the end of October 2009 [plaintiffs] were specifically informed no such modification would be given changing the loan to a fixed rate." They further assert that they can allege that "the said attempts were all one sided on [their] part and that [them] 'trying to work' [with] Countrywide meant that they contacted Countrywide through these months to initiate further discussions . . . [h]owever . . . during these months there was no good faith or even any overture by Countrywide to even consider their request." Finally, plaintiffs contend they "would allege in . . . an amended complaint that [their attempts] were to no avail because Countrywide did not during those months engage in any negotiation[,] meaning they refused to cooperate or respond in any meaningful way

7

to the attempts [plaintiffs] were making to have them even consider the promise they made to work with them if they signed the Modification Agreement."

None of the foregoing proposals is sufficient to cure the defect in plaintiffs' complaint, however, because at no point do plaintiffs suggest they can amend their complaint to allege that in October 2008, when Countrywide promised to "work with Plaintiffs to modify their loan," Countrywide actually *did not intend to work with plaintiffs*. Instead, all of plaintiffs' proposals go to the issue of whether Countrywide did, in fact, work with plaintiffs to modify their loan after promising to do so. Stated another way, plaintiffs have represented that they can allege that Countrywide did not keep its promise, but plaintiffs have *not* represented that they can allege that Countrywide *did not intend* to keep its promise when it made that promise to plaintiffs in October 2008. Under these circumstances, plaintiffs have shown no abuse of discretion in the denial of leave to amend their cause of action for fraud.

III

*Reformation Of An Unconscionable Contract*

In their second cause of action, plaintiffs alleged that the promissory note they signed in October 2006 was "procedurally and substantively unconscionable" because it was " a contract of adhesion," "they were misled regarding a future modification," and "by its terms, it called for extremely high interest when Plaintiffs' business was suffering losses." Plaintiffs further alleged that they were "entitled to reformation of all unconscionable terms of the Note and damages arising from said unconscionable Note."

Defendants contend that unconscionability is not a basis for reformation of a contract; instead, a contract may be reformed only based on fraud or mistake. In reply, plaintiffs assert that they qualify for reformation based on fraud because "the terms [of the note] were unconscionable *because* they were fraudulent."

"When, through fraud . . . a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that

8

intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." (Civ. Code, § 3399.) A cause of action based on fraud, however, is subject to a three-year period of limitations that runs from "the discovery, by the aggrieved party, of the facts constituting the fraud." (Code Civ. Proc., § 338, subd. (d).) Here, the only possible "fraud" plaintiffs have identified with respect to their signing of the note in 2006 is Welch's statement that when it came time for the construction loan to become permanent, there would be many options available for plaintiffs to choose from, including a 40-year loan with 10 years of interest-only payments and an interest rate of 4.25 percent. But as the trial court concluded, plaintiffs knew this statement was false no later than August 2008, when the Countrywide representative told them there were no options for permanent financing other than the "30 year Jumbo adjustable rate mortgage." Because they did not commence this action until February 2012, the trial court correctly concluded that this cause of action, too, is time-barred.

IV

*Wrongful Foreclosure*

Plaintiffs alleged in their third cause of action that the notice of default recorded in November 2011 by Recontrust was void because Recontrust was not properly substituted in as the trustee under the deed of trust because there was no affidavit of mailing attached to the substitution of trustee that was recorded on the property, as required by section 2934a of the Civil Code.[2]

The pertinent portion of section 2934a appears to be subdivision (c), which provides as follows: "If the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary or beneficiaries or

---

[2]     All further section references are to this code unless otherwise noted.

their authorized agents shall cause a copy of the substitution to be mailed, prior to, or concurrently with, the recording thereof, in the manner provided in Section 2924b, to the trustee then of record and to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. *An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision.*" (Italics added.)

Defendants contend that the statute does not expressly require the affidavit of mailing to be attached to the copy of the substitution of trustee form that is recorded. That is true, but such a requirement may well be implicit in the statute. We need not decide that question, however, because plaintiffs' wrongful foreclosure cause of action lacks merit for another reason. Subdivision (c) of section 2934a specifies that it applies "[i]f the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale." The documents appended to plaintiffs' original complaint show that the substitution of trustee was signed on November 10, 2011, and recorded on November 14, 2011. The notice of default was also recorded on November 14 (one second after the substitution of trustee). Under subdivision (d) of section 2934a, "[a] trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes *from the date the substitution is executed* by the mortgagee, beneficiaries, or by their authorized agents." (Italics added.) Thus, a substitution of trustees is "effected" for purposes of section 2934a on the date the substitution is executed, and as long as that occurs *before* the notice of default is recorded, subdivision (c) does not apply. That is the case here. Recontrust was substituted in as trustee on November 10, when the substitution of trustee was executed, and because the notice of default was not recorded until four days later, the provisions of subdivision (c) do not apply here. Accordingly, the fact that an affidavit of mailing was not attached to the substitution of trustee that was recorded is of no moment, and the trial court properly sustained the demurrer to this cause of action.

10

## V

### *Unlawful Business Act Or Practice*

The unfair competition law provides for various forms of relief against "unfair competition," which is defined to include "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) "With respect to the *unlawful* prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200. [Citations.] ' "[I]n essence, an action based on Business and Professions Code section 17200 to redress an unlawful business [act or] practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful [acts or] practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." ' " (*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.* (2002) 104 Cal.App.4th 508, 515.)

Here, in their fourth cause of action, plaintiffs alleged that "the unlawful acts and practices of Defendants *alleged herein* constitute unlawful or unfair business practices." (Italics added.) In other words, plaintiffs sought to use their "previous causes of action . . . as the predicate wrongdoing for" their cause of action for unlawful business acts or practices. Thus, this cause of action was premised on: (1) the statement by Welch in 2006 about the options that would be available for permanent financing at the end of the construction period; (2) the statement by the unnamed Countrywide representative in 2008 that Countrywide would work with plaintiffs on a loan modification; and (3) the notice of default in 2011.

As for the statement in 2008, we have determined already that plaintiffs failed to adequately allege that this statement amounted to promissory fraud because they did not allege, and have not suggested they *can* allege, that Countrywide did not intend to perform that promise at the time it was made. Because this statement is not actionable as

11

fraud, it also cannot provide a basis for plaintiffs' cause of action for *unlawful* business acts or practices.**3**

As for the notice of default, we have determined already that plaintiffs' claim that it was void because no affidavit of mailing was attached to the copy of the substitution of trustee that was recorded is without merit. In light of this conclusion, there was nothing unlawful about the notice of default that would allow it to serve as the basis for a cause of action for unlawful business acts or practices under the unfair competition law.

That leaves the 2006 statement by Welch. Defendants argued in support of their demurrer that any claim for unlawful business acts or practices based on this statement was time-barred by the four-year limitations period in Business and Professions Code section 17208. By the terms of that statute, however, the limitations period runs from the time the cause of action *accrues*, and defendants made no effort to show why an unfair business acts or practices claim based on an allegedly fraudulent statement should be deemed to accrue when the statement was made -- in October 2006, more than four years before this action was commenced -- rather than when plaintiffs learned of the falsity of the statement -- in August 2008, *less* than four years before this action was commenced. Accordingly, defendants failed to show that the limitations period necessarily barred plaintiffs' fourth cause of action, to the extent that cause of action was based on the October 2006 statement.

Beyond the statute of limitations, defendants sought to challenge the unlawful business acts or practices cause of action on the same bases they challenged the other causes of action. The same is true on appeal. None of their challenges to the fraud cause

---

**3**      Because plaintiffs do not offer any argument under the "fraudulent" prong of the unfair competition law, we do not address that prong of the law; instead, we limit ourselves to whether plaintiffs have adequately pleaded an *unlawful* business act or practice.

12

of action, however, is persuasive with respect to the 2006 statement. To the extent defendants asserted that plaintiffs failed to allege justifiable reliance, we disagree. It is true that, "[i]n addition to pleading actual reliance, the plaintiff must set 'forth facts to show that his or her actual reliance on the representations was justifiable, so that the cause of the damage was the defendant's wrong and not the plaintiff's fault.' " (*Beckwith v. Dahl*, *supra*, 205 Cal.App.4th at p. 1066.) Here, plaintiffs satisfied that requirement by pleading that they were "unaware of, and could not reasonably have discovered, material information regarding the Subject Loan because [they] would not be able to ascertain from the loan documents, even with careful examination, that the promised options would not be available at the time the Construction Loan converted into a permanent loan." In essence, they alleged that they could not have independently determined whether Welch was telling the truth about the loan options that would be available when construction ended, so they reasonably relied on his representations, as a loan officer for Countrywide, about what those options would be. That was sufficient.

To the extent defendants asserted that Welch's statement was not actionable because it pertained to future events -- i.e., what loan options would be available when construction ended -- we also disagree. It is true that "expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action." (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 308.) It has also been said that " 'an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions.' " (*Id.* at pp. 309-310.) But " '[t]he fact that statements relate to the future will *not* preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter peculiarly within the speaker's knowledge.' " (*H. W. Smith, Inc., v. Swenson* (1930) 105 Cal.App. 60, 64, italics added.) Here, what loans Countrywide was going to offer in the future was a matter peculiarly within the company's knowledge, and it can be inferred from plaintiffs'

13

allegations that Welch intended his representation on this subject as one of fact and plaintiffs accepted the representation on that basis. Accordingly, that the representation pertained to the future does not preclude liability in this instance.

Defendants also asserted in support of their demurrer that plaintiffs' claim for unlawful business acts or practices was not pleaded with sufficient particularity. Just like a cause of action for fraud, a cause of action under the unfair competition law must be pleaded with reasonable particularity. (See *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619 [unfair competition]; *Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1262 [fraud].) With respect to the 2006 statement by Welch, however, the allegations of the first amended complaint were sufficiently specific. Plaintiffs alleged that over the telephone around the beginning of August 2006, Welch told them "when it came time for the Construction Loan to become permanent there would be many options available to Plaintiffs that they could then choose between," including "a 40 year loan with 10 years Interest Only at 4.25%." They further alleged that "[w]hen WELCH made these representations, he knew them to be false and made the representations with the intent to deceive and induce Plaintiffs to act in reliance on the representations." They alleged that Welch knew they "were unaware of, and could not reasonably have discovered, material information regarding the Subject Loan because Plaintiffs would not be able to ascertain from the loan documents, even with careful examination, that the promised options would not be available at the time the Construction Loan converted into a permanent loan." They alleged that they "were ignorant of the concealed information and believed [Welch's] representations to be true" and that "[i]n reliance on these representations, [they] were induced to, and did, accept the Subject Loan," and "[h]ad [they] known the actual facts, they would not have accepted the Subject Loan." And they alleged that as a result of the fraud, they "have been caused to pay higher interest rates than they would have paid had they been placed in the best loan for which they qualified," as well as suffering other negative

consequences relating to their delinquency on the loan payments and the resulting foreclosure. All of these allegations are sufficiently specific to meet the particularity requirement.

Defendants contend plaintiffs "lack standing to assert violations of [the unfair competition law]" because they "do not specify any money or property actually lost" and thus "cannot show the injury in fact or lost money required to demonstrate standing." We disagree. To have standing to sue under the unfair competition law, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.) Plaintiffs did that here by alleging (among other things) that as a result of defendants' wrongful conduct, they had to pay higher interest than they otherwise would have paid. Defendants contend "[p]laintiffs cannot allege interest as damages because they freely contracted for this as part of their loan agreement," but that argument misses the point of plaintiffs' claim entirely. The essence of plaintiffs' claim is that they were wrongfully induced to sign up for the "One Time Close" loan, with its attendant increased interest rate, based on Welch's fraudulent representation to them that they would be able to transition into a 40-year, 4.25 percent fixed rate loan with 10 years of interest-only payments at the end of construction, and as a result they paid higher interest. That is sufficient to establish plaintiffs' standing.

In summary, we conclude that with respect to the representation by Welch in 2006, plaintiffs' complaint states facts sufficient to constitute a timely cause of action for an unlawful business act under the unfair competition law. Accordingly, the trial court erred in sustaining the demurrer to this cause of action.

VI

*Equitable Estoppel*

Plaintiffs contend they sufficiently pleaded "each and every element" of a cause of action for equitable estoppel, and therefore the trial court erred in sustaining defendants' demurrer. This argument is without merit because " ' "[t]he [equitable estoppel] doctrine acts defensively only" ' " and "a stand-alone cause of action for equitable estoppel will not lie as a matter of law." (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1463.)

DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with instructions to vacate its order sustaining defendants' demurrer without leave to amend as to plaintiffs' entire complaint and to enter a new order (1) sustaining defendants' demurrer without leave to amend as to the first, second, third, and fifth causes of action but (2) overruling the demurrer as to the fourth cause of action. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


                                   _____ROBIE_____, J.



We concur:



_____RAYE_____, P. J.



_____BUTZ_____, J.


16